## The Chicago and Northwestern Railway Co.

### v.

## Lyman Taylor *et al.* Admrs. etc.

1. NEGLIGENCE—*liability of railroad company for injury to its servants.* While it is true, that a common employer is not responsible to a servant for an injury caused by the negligence of his fellow-servant engaged in the same line of employment, yet it is the duty of a railway company, as employer, to provide safe structures, competent employees and engines, and all appliances necessary to the safety of the employed, and to adopt

such rules and regulations for running its trains as will insure safety, and, having adopted them, to conform to them, or be responsible for consequences resulting from a departure from them.

2. Where a station agent and switchman of a railway company was, while in the discharge of his duty, and without negligence on his part, on a dark night, struck by a car and killed in attempting to get to the switch in obedience to a signal, and it appeared that the switch from its construction was attended with danger, that the company had adopted no rules and regulations in respect to the switch, which was what is known as a "flying-switch," and that the flat cars sought to be switched off, the front one of which struck the deceased, were not properly furnished with brakes, there only being one good brake on the four, and there was no light on the front car, as is usual of a dark night, it was *held*, that the company was liable for causing the death, as it was guilty of negligence in not having the train properly lighted and the cars furnished with sufficient brakes, and which neglect was the cause of the accident.

3. Evidence—*error in admission rendered harmless and obviated.* Where evidence is admitted to sustain the allegations of a count in a declaration, which may have been erroneous, yet, if all claim to recover on such count and the grounds therein stated, are abandoned, and a recovery had upon different grounds, stated in another count, the error in admitting the testimony, if any, is obviated, and its admission becomes harmless.

Appeal from the Circuit Court of Winnebago county; the Hon. William Brown, Judge, presiding.

Mr. B. C. Cook, for the appellants.

Messrs. Crawford & Marshall, and Messrs. Lathrop & Bailey, for the appellees.

Mr. Chief Justice Breese delivered the opinion of the Court:

This was an action on the case, brought to the Winnebago circuit court, by the administrators of Henry P. Taylor, deceased, against the Chicago and North Western Railway Company, to recover damages for the death of their intestate, alleged to have been caused by the negligence of defendants.

Under the plea of not guilty, and a special plea, the company set up as a defense the negligence of the deceased as the cause of his death; that the death was caused by the negligence of the fellow-servants of the deceased engaged in the

same line of employment, and therefore the company were not responsible.

The jury, under instructions of the court, found for the plaintiffs, and assessed the damages at five thousand dollars, on which the court, overruling a motion for a new trial, rendered a judgment.

To reverse this judgment the defendants appeal.

It appears the deceased was employed by the company as station agent and switchman at Harlem, a small station on the line of appellants' road, on the night of October 18, 1870, and had been so employed for five years or more. The switch at that station is connected with the main track at one end only, so that only what is called a "flying-switch" could be made by a train coming from the north. It was about ten o'clock at night, of a dark night in October, when the signal was given for the switch. It was so dark that platform cars could not be seen without a light. At this hour four flat cars, each about four feet high, making a string nearly eight rods in length, were about to be run into Harlem station by means of a "flying-switch." The deceased was in the office in the station-house listening for signals, when the signal for the flying-switch was made. He seized his lantern and mail-bags, and with alacrity started to his post, on the run, as straight as he could go for the switch. One Tuthill, a friend of deceased, who was in the office with him when the signal was given, followed him half way from the office to the railroad track, by which time the engine had passed, and the brakeman came along with four flat-cars, and inquired where the agent was. Tuthill replied he had gone out, or as Easton, another witness, says, he had gone up to turn the switch, and asked the brakeman if he had not seen him. The brakeman said he had not. Tuthill then told him he had either run over him or knocked him off the track. Tuthill got the brakeman's lantern to look for the deceased, when he, and Easton, another friend, got on the flat cars and rode back to the switch. There they got off, and went down five or six rods from where the cars

464 C. & N. W. R. W. Co. *v.* Taylor *et al.* [Sept. T.

Opinion of the Court.

were, and found deceased lying along the side of the track, among the wood, with his face to the north.

We understand the manner of making a flying-switch to be this: The cars intended to be switched are uncoupled from the train at the proper point by the brakeman, then the locomotive and cars attached are started up, and pass the switch so far in advance of the cars to be switched that, after the engine and cars attached have passed the switch, the switch can be turned in time to receive the remaining cars, which must have momentum sufficient to pass them into the switch.

There was wood loosely piled around the switch, five or six feet high, and had been there for two or three days, which, to get from the station-house to the switch, it was necessary to pass over, or go along the track. This accounts for deceased being on the track when he was struck, as testified by Tuthill. He died in about one hour after he was struck.

It is in proof there was but one brakeman and one lantern on these four flat-cars, and it is further proved that but one of the cars had on a sufficient brake, and that was the car farthest off from the switch, and at the rear end of this car, still farther off, was the lantern and brakeman. It was a kind of night, as one of the witnesses, Disbrow, route agent of the Kenosha and Rockford Railroad, describes. it, when smoke and steam settled down about the train, so that a person could not see where the train was; especially it settled down on the north and west sides of the train.

Appellants make the point, that they are not liable to their servants for injuries sustained by the negligence of fellow-servants engaged in the same line of employment.

This principle has been repeatedly recognized by this court, first in *Honner* v. *Ill. Cent. R. R. Co.* 15 Ill. 550, the doctrine of *respondeat superior* not being applicable to cases of injuries sustained by one servant through the carelessness of another. In *Ill. Cent. R. R. Co.* v. *Cox*, 21 ib. 20, the same ruling was made; and also in *Moss* v. *Johnson*, 22 ib. 633; *Ch. and Alton*

*R. R. Co.* v. *Murphy*, 53 ib. 336, and *Ch. and Alton R. R. Co.* v. *Keefe*, 47 ib. 108. Appellants insist the deceased was within the rule stated in these cases. It was his duty to turn the switch whenever cars were to be set from the main-track to the side-track, and had known for many years precisely the manner in which it was done; that he knew he would be obliged to pass from the station-house to the switch, and if he went upon the track he might be injured by the carelessness of other servants of the company ; that he knew perfectly well the manner in which the wood was piled along the side of the track, and having entire control of the station, could have changed the manner of throwing off the wood, and he must be presumed to have contracted with reference to the danger to which he would be exposed by the carelessness or negligence of those engaged with him in causing the trains to be switched from one track to another at that point.

We concur in much that is said by counsel on this point, but we do not think the case turns upon the principle of the cases cited, or is dependent upon it, but rather upon the doctrine affirmed in *Ill. Cent. R. R. Co.* v. *Jewell, Admx.* 46 Ill. 99, *Schooner Norway* v. *Jensen*, 52 ib. 373, *Chicago and N. W. R. R. Co.* v. *Jackson*, 55 ib. 492, and *Perry* v. *Ricketts*, ib. 234. The case of the *Chicago and N. W. R. R. Co.* v. *Swett, Admr.* 45 ib. 197, may also be cited, the ruling idea in all which is, admitting the principle that a common employer is not responsible to a servant for an injury caused by the negligence of his fellow-servant engaged in the same line of employment, it is nevertheless the duty of the employer to provide safe structures, competent employees and engines, and all appliances necessary to the safety of the employed, and, as was said in *Chicago B. and Q. R. R. Co.* v. *George*, 19 ib. 510, their duty to adopt such rules and regulations for running their trains as would insure safety, and having adopted them, conform to them or be responsible for all consequences resulting from a departure from them.

30—69TH ILL.

It is in proof in this case that no rules or regulations had been prescribed by this company, and no directions ever given as to the care to be observed in making a flying-switch, an operation, when made at night, attended with more or less danger. One of the witnesses for the company, the conductor of this train, testified he never saw any rules about flying-switches, and does not think any body else ever did. Yet, in the next breath he said, "We used three whistles as signal for the switch, and one for the station." By this we understand it was by force of a prescribed rule these signals were made. Important to be made, certainly, and so important, a railroad company would be justly chargeable with negligence in not prescribing them and enforcing them. It is perfectly feasible to prescribe definite rules for making flying-switches, though they may be seldom made.

But waiving this topic, an examination of the testimony shows that these flat cars, switched off on a dark night in October, were not provided with good and sufficient brakes; that in fact there was but one good brake on the four, and that at the far end of the hindmost car, at which point stood the brakeman with a lantern. Post, the brakeman, testifies one brakeman could control four cars readily. By this, he certainly means to be understood if the cars were all fitted with brakes in good working order, for, as it requires but about half a minute to set a brake, he could set all of them in two minutes. From his testimony we infer he tried all the brakes, and found none to hold until he reached the one on the last car. He says there was a good brake on the second and on the fourth car, but on a careful examination, made by two of plaintiff's witnesses the next morning after the accident, it appears there was but one. The others seemed to have been out of order for a considerable time. That it was appellants' negligence the brakes were not in working order, can not be denied. It was their duty to have sufficient brakes, and a failure in this regard was negligence.

Again, it was negligence of the company in not furnishing sufficient light on these cars. On the whole train—and it was a passenger train—there were but three lamps. Possibly the engine-driver had one, which would make four in all. Some of the witnesses for appellees, familiar with the station where the accident happened, testify that they usually expected to see a brakeman on the front car at the first brake on the car, and a light with him. One of them, Fabrick, testified he did not recollect of ever seeing a flying-switch made in the night time without the brakeman being on the front car with a light, and Tuthill and Easton testify in the same way, and it is not contradicted.

That the brakeman was not negligent or careless in taking the position he did on the rear car is very apparent, for the reason it was the only car which had a good and sufficient brake. He could not, in any other position, control the cars. He could, it is true, have left his lantern on the front end of the front car, but he could not safely do that, for in a night so dark as that was, it was absolutely necessary for him, after detaching the forward car, to have a light, to get safely back eight rods to the rear car, which alone had a brake. We can come to no other conclusion than this, that it was negligence in the company in not providing sufficient light on these cars. There can scarcely be a doubt, had there been a light on the front car, and a brake in working order, this accident would not have happened.

To make a flying-switch is attended with danger which could be obviated by extending the switch to the track at the south end. Constructing it and continuing it in a mode dangerous to those employed about it, imposed upon the company the duty of using every reasonable precaution against accident. In this case the expenditure of a few dollars would, in all probability, have prevented this terrible accident.

As to the conduct of deceased, we perceive nothing in the record to charge him with a want of proper care. He had a right to expect the light was on the front car. It was on the

rear car eight rods off, and the front car in thick darkness. This car struck him. He was then in the attempt to perform a duty enjoined upon him. He proceeded with all proper caution, but, for want of proper brakes on the cars, and absence of necessary light, which appellants were bound to supply, he came to an untimely and violent death. The death was caused by the negligence of the company. Appellants impliedly contracted with deceased that they would use due care in providing such machinery, apparatus and appliances and other necessary means suitable and proper to the prosecution of the business in which their servants are engaged, so as to insure a reasonable degree of safety to life and security against injury. We do not find that appellants have fulfilled this contract, and must be held liable for the consequences. When dangers are created by railroad corporations it is their bounden duty to provide all reasonable protection against them.

We have examined the instructions given on both sides, and, without going into a critical consideration of all of them, are of opinion they are substantially correct, and placed the law of the case fairly before the jury. The third count of the declaration was sustained by the proof, and instruction four, complained of, was applicable to that count.

On the whole record we think justice has been done, and the judgment should be affirmed.

*Judgment affirmed.*

The foregoing opinion was filed as of the September term, 1872, and a rehearing having been granted, the following additional opinion was filed as of the September term, 1873:

Per CURIAM: A rehearing was granted on the petition of appellants, on the suggestion the court had overlooked a point made on the hearing, and which would reverse the judgment. That point was the admission of hearsay testimony.

We have examined this point, and find no such testimony was admitted. The testimony admitted related to something which had occurred long before the accident, and was for the purpose of showing the engine-driver was reckless.

As all claim on this ground was abandoned by the plaintiffs, they resting their case on the third count of the declaration, if there was error in admitting that testimony, it did no harm.

The opinion heretofore filed must stand as the judgment of the court.