## GATES v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY CO.

1.   The law as between master and servant not only imposes upon the employer the duty of using reasonable care in providing safe and proper machinery, but also reasonable care in placing the same under the con-

trol of a competent servant or employe charged with the duty of prop-
erly attending to the same, and seeing that it is properly used for the
safety of employes, and, when not in use, is properly and safely secured.
And not only must the employer use reasonable care in selecting a com-
petent servant to take charge of the machinery but the same care must
be exercised in continuing him in the service; otherwise the employer
will become responsible for his care and skill.

2. There was evidence in this case tending to prove that a derrick had
been erected by the company on the line of its side track, which, when
not properly secured when not in use, was dangerous to employes of the
company by reason of the arm of the derrick—to which was suspended
a heavy iron hook, pulley and chain—swinging over the track. *Held*,
that it was the duty of defendant to place such machinery under
the control of a competent servant or employe charged with the duty
of seeing that it was properly secured when not in use, and, it not being
shown in this case that the machinery in question was so placed in
charge of any such servant or employe, there was evidence from which
a jury might properly find negligence on the part of the defendant in
causing the injury where a brakeman of the company, while on duty,
and without fault on his part, was injured by reason of the derrick, not
being properly fastened, swinging over the track.

3. Where a derrick had been erected by defendant on the line of its side-
track near a station,—in July,—which derrick was used by shippers,
and was sometimes secured after being used and sometimes left unfast-
ened, from that time to the time of the accident, *held*, that the defend-
ant must be presumed to have known the manner of its use and the
care used in securing it when not in use, and that a special finding that
neither the defendant nor any of its servants knew it was unfastened at
the time of the accident was an immaterial finding. *Held, further*, that a
special inquiry, "How long had it been unfastened at the time of the
accident?" which was answered "Unknown," by the jury was also im-
material under the facts shown in this case.

4. Special findings control the general verdict only when they are so incon-
sistent that they cannot stand together. *Held*, in this case, that the
special findings are not inconsistent with the general verdict, the evi-
dence tending to show that the negligence of the defendant was in
erecting machinery on the line of its side track that, when not properly
secured, was dangerous to its employes, without placing the same under
the control of a competent servant or employe charged with the duty
of seeing that it was so properly secured when not in use.

5. The negligence of a fellow-servant that will relieve the master from lia-
bility for an injury to an employe is the omission of such fellow-servant
to perform some act which it is made his duty to perform, or the doing
of some act in the course of his duties that causes the injury.

(Syllabus by the Court.    Opinion filed January 15, 1892.)

Appeal from circuit court, Brown county.    Hon. A. W.
CAMPBELL, Judge.

Action to recover damages for injuries received while in the employ of defendant. Judgment for plaintiff. Defendant appeals. Affirmed.

The facts are fully stated in the opinion.

*John H. Perry ( H. H. Field of counsel)* for appellant,

The court could either set aside a finding contrary to the undisputed evidence, or find the fact for itself in favor of the defendant. Gammons v. Abram, 53 Wis. 323; Schweickhart v. Stuewe, 75 Wis. 157; Stringham v. Cook, 75 Wis. 589. Negligence is not to be presumed. There was no implied or constructive notice to defendant that the derrick was unfastened. 28 Albany Law Journal, 284; McPadden v. R'y Co. 44 N. Y. 478. The burden is upon plaintiff to prove such notice. Wood's Master and Servant, § 368, 382; 2 Thompson on Negligence, 1053, § 48; Pierce on Railroads, 373; Klatt v. Milwaukee, 53 Wis. 196; Oehnie v. Cook, 7 N. Y. Sup. 764; Whitney v. Lowell, 24 N. E. 47; 151 Mass. 212; Bailey v. R'y Co., 3 N. Y. Sup. 585; Toner v. R'y Co. 69 Wis. 188; Hobbs v. Stoner, 62 Wis. 109; Baldwin v. Co. 68 Ia. 37; City of Madison v. Baker, 103 Ind. 41; 2 N. E. 236; Atchinson v. Wagner, 7 Pac. 204; 33 Kan. 660; Sherman v. Lumber Co., 45 N. W. 1079; Morrow v. Com'rs, 21 Kan. 484; Atchinson v. McCandliss, 6 Pac. 587; 33 Kan. 366.

The negligence of the agent in leaving the derrick unfastened was that of a co-employe, and defendant is not liable. § 3753, Comp. Laws; 85 N. Y. 61; Elliott v. R'y Co., 5 Dak. 523; Gaffney v. R'y Co., 7 Atl. 284; 15 R. I. 456; Galveston, etc. v. Farmer, 11 S. W. 156; 38 Am. and Eng. R. R. Cas. 75; Brown v. Co. 31 Minn.; 18 N. W. 834; Dealey v. R'y Co., 4 Atl. 170; Harvey v. Railroad, 88 N. Y. 481; Roberts v. Railroad, 33 Minn. 218; 22 N. W. 389; Finney v. Railroad, 62 Barb. 218; Randall v. Railroad, 109 U. S. 478; Brown v. Railroad, 7 Pac. 447; 72 Cal. 523; Farwell v. Co., 4 Met. 49.

*Taubman & Potter* for respondent.

A special finding must be irreconcilably inconsistent with the general verdict, before the latter can be set aside and the former substituted. Thompson on Trials, § 2691; Railroad

v. Jones, 34 Kan. 443; Alhambra Water Co. v. Richardson, 72 Cal. 598.

Defendant knowing that it was the habit of shippers to leave the derrick unfastened, and failing to use due care to keep it fastened, must be held charged with notice of the probable consequences of its neglect. Thompson on Negligence, p. 984. Defendant was negligent in allowing the indiscriminate use of the derrick in such a way as to leave it in a dangerous condition. Thompson on Negligence, p. 988; Railroad v. Taylor, 69 Ill. 461; Cooper v. Railroad, 44 Iowa, 134.

CORSON, J. This was an action brought by plaintiff, a brakeman in the employ of defendant, to recover damages for injuries received by him while in the performance of his duties as such brakeman, Verdict and judgment for plaintiff. Defendant appeals.

The accident resulting in the injury complained of occurred in October, 1889, at Eureka, in this state, and was caused by an iron hook suspended from the arm of a derrick constructed by the defendant. The cause of the injury and the negligence of the defendant are stated in the complaint as follows: "That on or about said 4th day of October, 1889, while so following his said usual occupation as brakeman, and while on top of a freight train at station of Eureka, McPherson county, South Dakota, and without any negligence on his part, and while exercising due, reasonable and ordinary care and skill as such servant, and while stepping from one car to another, as was then necessary, in the direction in which said train was then moving, and against a violent wind, this plaintiff was struck on the head and dangerously injured by the large, heavy and dangerous iron hook and pulley which was attached to the end of the arm or projection of the said derrick then upon the said right of way by the side of said railway track, and which was the property of and used by the defendant in conducting its business of loading and unloading freight shipped over its said railway. That the said derrick was negligently constructed, controlled, and operated by said defendant, and it also negligently permitted the arm or projection of the said derrick to

swing around, so that the end of the said arm or projection was midway over said cars, to which said end was attached a chain, which was suspended therefrom, at the end of which was a large iron pulley and iron hook suspended in the air about five feet above said cars upon which this plaintiff was then and there carefully performing the service required by his said employment." The answer denied all negligence on the part of the defendant. The cause was tried by a jury, which found a general verdict, and also found upon particular questions of fact submitted to them by the court. These special findings are as follows: "(1) Question. Was the derrick unfastened at the time of the accident? Answer. Yes. (2) Q. How long had it been unfastened at the time of the accident? A. Unknown. (3) Q. Did any employe of the defendant know that the derrick was unfastened at the time of the accident? If so state what employe it was? A. No. (4) Q. Was said derrick provided with proper means of fastening it at and prior to the time of the accident? A. No. (5) Q. Did the plaintiff know, or in the exercise of ordinary care could he have known, that said derrick was out of place at the time of the accident? A. No.

Numerous errors are assigned in the record, but as only two are relied on by counsel for appellant, the others will not be noticed. These two are as follows: "*First*. There is no evidence of negligence on the part of defendant or its employes which caused or contributed to the accident. *Second*. The defendant is not liable, under Section 3753 of the Compiled Laws of 1889, because the negligence, if any, was that of a person employed in the same general business with the plaintiff." The learned counsel for the appellant contend that special finding No. 4 is contrary to the undisputed evidence, and should therefore have been set aside or the facts found by the court. That finding, it will be noticed, is that the derrick was not provided with proper means of fastening at or prior to the time of the accident. If this finding is to be strictly construed to mean simply the instrument provided for fastening it in its proper position when not in use, we think the contention of counsel is correct. The testimony of Drum, who erected the der-

rick for the defendant, is clear and positive that the iron pin provided was the proper and usual fastening, and his evidence is not contradicted. But if the term "means" is to be construed as including the agencies provided for fastening the derrick when not in use, as well as the instrument to be used, then the finding of the jury seems to be supported by the evidence; and this is probably the view taken of the question by the jury. But, in our view of the case, we do not regard the finding as very material, and therefore pass to the question whether or not there is evidence of negligence sufficient to sustain the general verdict. Assuming that the derrick was properly constructed, and provided with a suitable appliance for fastening the same, a further duty was imposed upon the defendant of using reasonable care in placing the machinery under the control of a competent servant or employe charged with the duty of seeing that it was properly used and properly secured when not in use. The law as between master and servant not only imposes upon the employer the duty of using reasonable care in providing safe and proper machinery, but also reasonable care in placing the same under the control of a competent servant or employe charged with the duty of properly attending to the same, and seeing that it is properly used for the safety of employes, and, when not in use, is properly and safely secured. And not only must the employer use reasonable care in selecting a competent servant to take charge of the machinery, but the same care must be exercised in continuing him in the service; otherwise the employer will become reasonsible for his care and skill. Thomp. Neg. p. 984; Shear. & R. Neg. §§ 35, 197, 183; Holden v. Railroad Co., 129 Mass. 268.

The evidence in this case fails to show that the defendant placed said derrick under the control of any servant or employe of the company charged with the duty of seeing that the same was safely fastened when not in use. The only evidence upon this subject was that of Drum, who constructed the derrick, and Guhin, the station agent. Drum testified that after completing the derrick he instructed Guhin in the manner of using and fastening it, and also gave similar instructions to a ship-

per, (not an employe of the company.) Guhin's testimony upon this subject is as follows: "I live at Eureka. Have lived there three years last July. I am agent of the Milwaukee Company. Been agent all that time. That station was opened three years ago the 22d day of July. That is the terminus of that line. As agent I have general charge of the station and business of the company. At the time of this accident no other persons were employed at that station except the section foreman. He lived there, I think. There were no other men on the section gang. * * * This derrick platform is on the west side of the west side track and about 20 feet north of the depot. This derrick was commenced to be built the 22d day of July, 1889, and I think it was finished the 29th of July. It was frequently used after that time by shippers of machinery, unloaded from cars onto the platform. I am familiar with the derrick. I recollect Mr. Drum being there. I heard his testimony in regard to giving instructions to me. He did that. He instructed me principally upon how to manage the chain and to fasten it. It was fastened by a pin which went down through two holes, one in the upper and one in the lower. I have seen that pin. I frequently fastened the derrick. I should judge the pin was 14 to 18 inches long, and about an inch bolt. It had a head on it. To fasten it I dropped it down into these holes. I have said something to the shippers about fastening the derrick. Three different shippers in town saw [used] it, and I told them to fasten it as soon as they got through with using it. Question. Did you frequently fasten that after it was used? Answer. Not very freqently, but I did sometimes when it was left without being fastened. It was generally fastened by the shippers as a rule. Whenever I saw it unfastened, or knew it was unfastened, I fastened it. I had not been using the derrick in any way at the time of the accident, or prior thereto. It had not been used by the company prior to the accident. I can't say positively who was the last person that used it. It was either one of the firm of E. Bach Lumber Company. I can't say how long prior to this accident. It was only a short

time. I did not know at the time this accident occurred that the derrick was unfastened. I went to it afterwards. The pin was there. It was not in its place. I put it in its place. It was there on the platform. The section foreman did not have anything to do with that derrick. I can't see how he would have. He didn't have control of it. Mr. Gates made complaint to me about the derrick the day he got hurt. He made none prior to that time. That was the first complaint he ever made. I can't say how frequently I fastened the derrick. It was not very often it was left without being unfastened. Whenever I knew it was unfastened I always fastened it. Probably two or three times before that, about, I had fastened it. At this time I had no knowledge that it was unfastened. Cross examination: The complaint he made to me about the derrick was after he was hurt. I can't state positively how many times I recollect of putting that pin in,—two or three times. I observed the derrick swinging loose, and put the pin in. Question. You never made an examination,—went there frequently, and examined it, and put the pin in, whenever you observed the derrick was loose? Answer. Yes, sir." It will be observed that Guhin nowhere states that this machinery was under his control as station agent, and the record is silent as to any instructions, general or special, by the defendant, regarding the same. Guhin, it is true, says that when he saw it unfastened he fastened it, but it does not appear from his evidence that he regarded it as his duty to see that, when not in use, it was properly secured. The matter of securing it seems to have been left to shippers who used it, who sometimes secured it and sometimes left it unfastened. It was used, Guhin says, a short time before the accident, and it was evidently left unfastened, as he further says that after the accident he saw the pin lying on the platform, and put it in its place. The question whether or not it "was part of the station agent's duty to look after, take charge of, and guard the derrick in question" was fairly submitted to the jury by the court in the following part of its charge: "I charge you as a matter of law that a station agent and a brakeman employed upon the same

line of railway are co-employes; and injuries to one through the negligence of the other will not create any liability against their common employer. There would, under such circumstances, be no negligence on the part of the employer for which he could be required to respond in damages. You are to determine from the evidence in this case whether or not it was a part of the station agent's duty to look after, take charge of and guard the derrick in question. If it it was, and the injury was occasioned through his neglect in that respect, then plaintiff cannot recover. If you fail to find from the evidence that it was, then you will determine from the evidence in this case, and under the instructions given you, whether or not the defendant has exercised such reasonable care as the law requires of it." The jury in finding a verdict for plaintiff under this instruction must have come to the conclusion that it was no part of the station agent's duty "to look after, take charge of, and guard the derrick," either when in use or not in use; and such a conclusion seems to have been fairly supported by the evidence. Under the rules of law as applicable to employer and employe, negligence on the part of the defendant was established independently of the question whether or not the derrick was properly provided with the proper means of fastening it, and the finding of the jury upon that question becomes immaterial, or at least is not important in determining this case.

It is further contended by counsel for the defendant that, as the jury found in answer to the third question that no employe of the defendant knew at the time of the accident that the derrick was unfastened, the fact is established that the defendant had no actual notice that the same was not fastened at the time of the accident, and that the further finding of the jury that the length of time that the derrick had remained unfastend prior to the accident was "unknown" precludes any presumption that defendant had any constructive notice of the fact that the derrick was unfastened, as, in the absence of a finding as to the time the derrick remained unfastened, a jury might presume that it was the shortest possible time. Whitney v. Lowell, 151 Mass. 212,

24 N. E. Rep. 47.   Counsel then invokes the rule applicable to
that class of cases in which the defect or neglect causing the
injury, had has existed for so brief a period of time that actual
knowledge must be shown in the employer of the existence of
such defect or neglect before the employe injured can recover.
The rule invoked presupposes that the employer has used rea-
sonable care not only in supplying the machinery, but also rea-
sonable care in placing it under the control of a competent ser-
vant charged with the duty of looking after it and seeing that
it is properly used, and, when not in use, is made properly
secure, and that this ordinary care has been exercised in re-
taining such servant.   When all these conditions are complied
with by the employer, and an injury occurs by reason of some
defect or negligence of a servant so recent that the employer
cannot be presumed to have knowledge of the defect or negli-
gence, then actual notice to the employer of its existence must
be shown in order to render the employer liable to an employe.
But where, as the evidence discloses in this case, machinery
belonging to the company, which might become dangerous to
the employes of the road when left unfastened, was erected by
the company, with no person specially charged with the duty of
looking after it, and seeing that it was properly and securely
fastened when not in use, such a rule does not apply.  The fact
that such machinery is so used for such a length of time as to
raise the presumption that the defendant has notice of such
facts renders the defendant liable without such actual notice.
In this case the evidence shows that for some time prior to the
accident the derrick in question was used by shippers,—some-
times fastened and sometimes left unfastened, or fastened with
props of wood, instead of the iron pin provided to fasten it;
and this must be presumed to have been known to the defend-
ant.   It was its duty by proper inspection and proper vigilance
to know the condition of its machinery, and the care with
which it was used.   The condition this machinery was allowed
to be in, at least for a considerable time prior to the accident,
is clearly shown by plaintiff in his testimony, which is as fol-
lows:  ''When it [the derrick] is swung around, the outermost

end of the projecting arm is right in the center of the track. When the hook is hanging down it is directly over the center of a box car,—what we call the running board. It was as near as they could get it in the center of the car, to take machinery off the car. I had seen it there prior to the 4th of October, 1889. I had seen it several times when we were backing in, and also when we were pulling out, swung around over the track with the chain projecting down. Sometimes it was not low enough to hurt anybody and sometimes it was. Once or twice I have got off on the side track, and wound the chain up, and also the man that was with me had wound it up once, when I had so observed it from the track. I don't know of any one in charge of it, unless it was the section boss. I did not see any one in charge of it at that time. I have wound it up twice when it was swinging around. The wind was the very cause to carry it around just as it wanted to. It would swing with the wind or force of the wind. Question. State whether or not you have ever made any complaint to any officer of the company in reference to the matter? Answer. Nothing more than to the section boss as I would see it swing around, and I said it would knock some one's eyes out if he didn't attend to it; and I don't remember what remark he made to me. I don't recollect how long prior to October 4, 1889, I made this remark to the section boss." This evidence is not contradicted by the defendant. We are of the opinion, therefore, that under the evidence in this case the answer of the jury to the second question, "Unknown" and to the third "No," do not aid the defendant. It may be true that appellant did not have actual knowledge of the fact that the derrick at the time of the accident was not fastened, and that no employe of the company had actual knowledge of it, still the fact that it was at times left unfastened, and was liable to be so left by reason of the want of proper care on the part of the appellant, was within its knowledge. The practice of leaving it unfastened had continued for such a length of time, and the appellant could have learned the facts by reasonable diligence, and its knowledge will therefore be presumed. Holden v. Railroad Co., 129 Mass.

268; Hulehan v. Railroad Co., 68 Wis. 520; 32 N. W. Rep. 529; Railroad Co. v. Taylor, 69 Ill. 461; Cooper v. Railroad Co., 44 Iowa, 134. Special findings control the general verdict only when both are so inconsistent that they cannot stand together. Thomp. Trials, § 2691; Railroad Co. v. Jones, 34 Kan. 443, 8 Pac. Rep. 730; Water Co. v. Richardson, 72 Cal. 598, 14 Pac. Rep. 379. The length of time the derrick was unfastened prior to the injury was immaterial, because appellant's neglect of duty did not depend upon the precise condition of the derrick at the time of the accident, but upon its failure to use due care to keep it fastened, or have it fastened after its use by shippers.

The second assignment of error relied on by counsel for defendant is "that the negligence, if any, was that of a person employed in the same general business with the plaintiff, within the meaning of Section 3753, Compiled Laws." We have seen from the part of the charge of the court quoted that the court below held with the defendant upon this proposition, and instructed the jury that the law is as contended for by counsel. Certainly the defendant has no reason to complain of this instruction, as the law is given perhaps too favorably for the defendant in certain respects not necessary now to be noticed. Under this instruction the jury evidently found that the station agent, not being charged with any duty connected with the machinery, was not chargable with any negligence. The negligence of a fellow servant that will relieve the master from liability is the omission by such servant or employe to perform some act which it is made his duty to perform; or the doing of some act in the course of his duties in such a negligent manner as to cause the injury. In this case, so far as the evidence shows, the station agent neglected the performance of no duty expressly imposed upon him, and did no act in the course of his duties that caused the injury. The jury, therefore, we think, very properly found the injury was not caused by the negligence of a fellow servant. The negligence disclosed by the evidence in this case was the negligence of the defendant in

erecting machinery on the line of its track that was liable, when not in use, to cause injury to the employes upon its road, and in not using reasonable care in placing the same under the control of a competent servant or employe charged with the duty of knowing at all times when the same was not in‛use that it was safely and properly secured, and he made responsible for its condition. The defendant is presumed to have known or by reasonable diligence could have ascertained, the manner in which the machinery was used, and the fact that‛it was frequently left, when not in use, unfastened, or insecurely fastened, and was not properly looked after by an employe or servant of the company charged with the duty of guarding it. These facts the jury by their general verdict are presumed to have found, and the findings in the special verdict are not inconsistent therewith. We are of the opinion that the general verdict of the jury was fully supported by the evidence. Finding no error in the record, the judgment of the court below is affirmed.