# THE MONMOUTH MINING AND MANUFACTURING COMPANY

*v.*

## PETER ERLING.

*Filed at Ottawa January 16, 1894.*

1.  NEGLIGENCE—MASTER AND SERVANT—*duty of master to furnish safe tools and machinery to servant.*  The principle is fully established as a rule of law, that the master is bound to exercise reasonable and ordinary care and diligence in providing and keeping in repair safe tools and machinery for the servant's use.  With this duty resting on the master, the servant accepting employment accepts it with the assumption that this duty will be complied with by the master, and he will have the right to assume that tools and machinery furnished for his use are safe, and will be kept in repair.

2.  SAME—*duty of servant as to tools and machinery furnished him.*  The duty rests on the servant to observe whether the machinery furnished him is in repair, and to report to the master if it is not.

3.  In this case, the rod and hook attached to the eye-bolt, and fastened to a lever by nuts on the eye-bolt, were the means of fastening the lever in place which was used to throw the machinery out of gear.  Only when the lever was fastened down by the hook thus attached, if the power was in motion, was it safe for the servants to enter the pans to throw the clay therefrom used for making tiles.  While so in the pans, for the hook to become unfastened or from any cause the lever to fly up, which it would do unless fastened down, was attendant with serious danger to the men in the pans :  *Held*, that such being the fact, the means of fastening the lever down was a part of the machinery that required supervision of the highest kind, and most strict compliance with the duty of the master.

4.  In the same case, the manner in which the eye-bolt was fastened to the lever was by passing it through a hole near the end of the lever, and then putting on nuts to hold the eye-bolt in place.  For this purpose two nuts were used on the same bolt, as by so doing the nuts were less likely to jar loose and allow the bolt to pull out of the lever.  One of these nuts had been off for more than two weeks, and the remaining one was therefore more likely to come off the bolt by reason of the jarring of the machinery, and this result actually occurred, and caused an injury to the plaintiff while working in the pan :  *Held*, that the duty of the master was to see that the machinery was reasonably safe, and that this was a continuing duty, that required supervision and inspection.

148  521
155   83
155  215

148  521
59a  37

148  521
170  114
170  521

148  521
174  536

148  521
95a  1  58

148  521
192  10332

148  521
101a  1172

148  521
212  17  25

148  521
115a  1542

5. In such case, if the machinery was out of repair for a length of time that with proper supervision and inspection it could reasonably have been known and remedied, then negligence existed in not exercising that supervision and inspection. The employment of a machinist to look after the machinery and do the repairing did not relieve the master from liability, as his duty was a permanent, continuing one, that could not be delegated to another so as to relieve the master from liability because of negligence of that other to whom that power and duty were delegated.

6. Same—*master's contract with servant.* Where a corporation employs workmen to labor in connection with dangerous machinery operated by steam, it impliedly contracts with the servant that it will exercise reasonable and ordinary care and diligence in providing and keeping in repair safe tools and machinery for the servant's use.

7. Same—*negligence of servant in not finding out defects in machinery.* Where the duties of a servant do not require him to be in charge of the machinery of the master, and his labors are only incidental to it, his want of knowledge of defects in the machinery can not charge him with negligence.

8. Same—*who are fellow-servants.* There is a class of cases in which the condition of a machine as to safety is constantly changing with its use, so as to require from the persons operating it, as a part of the ordinary use of it, reconstruction or re-adjustment of parts as they become worn out or displaced, from materials or new parts supplied by the master. Such work is a part of the regular business of the servant in using the machine, and not of the master in maintaining it. In such cases, negligence in doing it is, as to all other employes, negligence of a fellow-servant. So far as the condition of the machinery depends upon this kind of attention, the master does his duty if he employs competent and suitable persons, and supplies them with everything needed for their work.

9. Same—*when master not liable for acts of fellow-servant.* The doctrine that an action by a servant will not lie against his master for an injury sustained through the fault of a fellow-servant, applies only to cases where the injury complained of occurs without the fault of the master, either in the act which caused it or the employment of the person who committed it.

10. Where a servant is injured by the operation of machinery which is rendered dangerous by the loss of nuts by which to control the action of the machine, and the same is operated by another servant, even if the latter servant and the plaintiff are fellow-servants, the fault of the master in not exercising proper care in providing means for repairing the machinery will be such that it will not defeat a recovery against him in an action by the injured servant.

11. In such case, if the servant operating the machinery has knowl-edge of the defects, not communicated to the plaintiff, or if such ser-vant, without objection or notification to the master, operates the defective machinery, the law will be that a servant, although he has assumed the risks of negligence on the part of his co-servants, can not be said to have assumed the risks incident to their negligence in using defective machinery.

12. SAME—*liability of master for injury from defective machinery— evidence of safer kind not proper.* In an action by a servant against the master for a personal injury caused by the unsafe fastenings to keep a lever or bolt in its place, plaintiff was allowed to put questions, on cross-examination of defendant's witness, tending to show there was a safer way to secure the nuts on the bolt and retain it in place : *Held,* that such questions were improper.

13. The issue was not whether the master might not have provided better machinery or inventions, or a better fastening for the bolt, but whether that employed was reasonably suitable and proper for the business. A master is not compelled to adopt every new invention, or pretended or actual improvement, new or old.

14. PRACTICE—*improper remarks in argument by counsel.* In the argument of a case, where a servant of a corporation seeks to recover damages against the corporation for a personal injury through negli-gence, the financial condition of the parties to the suit is not a question for the jury, and remarks of comparison in that behalf, in argument to the jury, are improper, and deserving of condemnation.

15. During the closing arguments to the jury in an action against a corporation, the plaintiff's counsel stated that the defendant was a wealthy corporation and the plaintiff a poor man. Counsel for the defendant called the attention of the court to the remark, and objected to what had been said, and the court said. "Counsel must keep within the record :" *Held,* that the remark was not reversible error.

16. Cases may arise where the impropriety and palpable effect of such language in argument, of itself, may be cause for a reversal, on the mere objection of a party to the suit and the incorporation of it into the record.

17. SAME—*limiting argument to the jury.* It is clearly within the legal discretion of the court to limit the time for argument to the jury. When the limitation is not unreasonable, and no objection or exception is taken to the action of the court in that regard, it will not be ground of reversal.

18. ERROR IN ADMISSION OF EVIDENCE—*cured by instruction.* After the admission of evidence tending to show that there was a safer way to secure the nuts on a bolt and retain it in place, the court instructed the jury that an action could not be maintained by the plaintiff because

there was a safer mode in which the business might have been conducted, the adoption of which might or would have prevented the injury; also, that the defendant was not bound to furnish the very best or most improved kind of machinery to be used in his business, etc.: *Held*, that these instructions cured the error in the admission of the improper evidence.

19. AMENDING COUNT—*after verdict to obviate clerical error.* Where the words "plaintiff" and "defendant" are in some parts of a count transposed, which is shown to be a clerical error from the context, the count may be amended either on the trial or after verdict, and an instruction directing the jury to disregard such count is properly refused.

APPEAL from the Appellate Court for the Second District ;— heard in that court on appeal from the Circuit Court of Warren county; the Hon. JOHN J. GLENN, Judge, presiding.

This is an action by appellee, against appellant, on account of personal injuries caused by a defect in machinery furnished by appellant for use in its factory where appellee was employed. The injury occurred while appellee was shoveling clay out of a pan about eight feet wide and fifteen inches deep, used for the purpose of mixing and tempering the clay. The mixing and tempering were chiefly done by heavy iron wheels moving rapidly inside the pan by means of steam power. These wheels were connected with a shaft, and so arranged that in revolving in the pan they worked from the center to the circumference, and back again. The machinery in the pan was controlled by means of a lever about ten feet long. To the end of the lever at the pan was attached a clutch, and when this clutch was raised by pulling down the outer end of the lever, it was thereby disconnected from the machinery which propelled the wheels, and the wheels would stop. Whenever the outer end of the lever was not held down, the clutch would fall down into place of its own weight, throwing the machinery into gear and the wheels would start. Near the outer end of the lever an iron eye-bolt was run through from below, and to the eye of the bolt was attached an iron rod about two feet long, with a hook on its lower end. This rod was used to operate the lever, and

when pulled down the hook at the lower end of the rod was fastened over a hook in a post by the side of the lever, holding the lever down and preventing the machinery from starting. The outer end of the lever, when pulled down to stop the machinery, was about five feet and nine inches above the floor where the men worked, and when up it was about seven feet and six inches above such floor. There were five of these pans in the same room and operated by the same gang of men. One of the gang, Costello, operated the levers, stopped and started the machinery, looked after the proper tempering of the clay, and was a sort of foreman. The rest of the gang shoveled clay into the pan, and when properly mixed and tempered shoveled it out again. The work of the men was done while the machinery was stopped, and if the machinery should start while the men were in the pans the most serious results to them were reasonably to be apprehended. The evidence showed that there was a thread on the end of the eye-bolt above the lever, and that the only method adopted for securing it was by nuts screwed down from above on top of the lever. Originally there were two such nuts,—one above the other,—but the upper nut had been gone from its place for at least two weeks, and probably much longer. The remaining nut had worked loose after the upper one had gone, and had been screwed down by Costello. The jar of the machinery tended to work the nut loose, and it was probably due to this cause that it worked off from the bolt and allowed it to come out of the lever. Appellant had a machinist, Carey, whose duty it was to look after the machinery and do the repairing. He was a witness for appellant, and testified that it was his duty to go around and see if anything was out of order, and if so, to repair it. To the same effect was the testimony of Apsey, the superintendent. Appellee denied that he had any notice of the defects of the machinery, or knew of the loss of the lock-nut. While appellee and another workman, Abrahamson, were in one of the mixing pans, in the line of their duty, shoveling out clay,

the eye-bolt came out of the lever which controlled the wheels in that pan, allowing the lever to fly up and throw the machinery into gear, whereby the wheels were started and appellee was seriously injured.

The second count of plaintiff's declaration charged that the machinery was negligently managed. In some portions of that count the words "plaintiff" and "defendant" were transposed, evidently by a clerical error, which, so far as appears, was not discovered before the trial.. Appellant pleaded to it, but asked the court to instruct the jury to disregard that count, and this the court refused to do.

Counsel for appellee, during the closing argument, said to the jury that appellant was a wealthy corporation and appellee a poor man. When the remark was made, appellant's counsel at once called the attention of the court and objected to what had been said, and the court said, "Counsel must keep within the record." There was no ruling by the court upon the propriety of the remark.

Before the argument was commenced the court limited the time for argument to one hour and thirty minutes on each side. The record also shows that counsel for appellee spoke five minutes longer than the time allotted to him. Counsel for appellant claim that the court overstepped the bounds of authority and propriety in the limitation, and wronged appellant in allowing counsel for appellee to use five minutes more than they did. The record, however, shows neither objection nor exception to the court limiting the time for argument, or to counsel for appellee occupying more time than limited to him.

. Objection and exception were taken to the giving of certain instructions for appellee, and the refusal and modifying of instructions asked by appellant.

The jury returned a verdict for $3000, and a motion for new trial was overruled and judgment was entered thereon, to which defendant excepted. That judgment was affirmed by

the Appellate Court for the Second District, from which this appeal is prosecuted.

Messrs. KIRKPATRICK & ALEXANDER, for the appellant.

Mr. J. A. McKENZIE, for the appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the Court:

It is first insisted that there is no evidence of negligence on the part of the defendant. The principle is fully established as a rule of law, that the master is bound to exercise reasonable and ordinary care and diligence in providing and keeping in repair safe tools and machinery for the servant's use. With this duty resting on the master, the servant accepting employment accepts it with the assumption that that duty will be complied with by the master, and has a right to assume that tools and machinery furnished for his use are safe, and will be kept in repair. The duty rests on the servant to observe whether machinery furnished him is in repair, and to report to the master if it is not.

The rod and hook attached to the eye-bolt, and fastened to the lever by nuts on the eye-bolt, were the means of fastening the lever in place which was used to throw the machinery out of gear. Only when the lever was fastened down by this hook thus attached, if the power was in motion, was it safe for the servants to enter the pans to throw the clay therefrom. Whilst so in the pans, for the hook to become unfastened or from any cause the lever to fly up, which it would do unless fastened down, was attendant with serious danger to the men in the pans. Such being the fact, the means of fastening that lever down was a part of the machinery that required supervision of the highest kind, and a most strict compliance with the duty of the master. The danger that would arise from defective fastening of that lever was known on the most superficial observation of the manner of its working. The manner

in which the eye-bolt was fastened to the lever was by passing it through a hole near the end of the lever, and then putting on nuts to hold the eye-bolt in place.  For that purpose two nuts were used on the same bolt, as by so doing the nuts were less likely to jar loose and allow the bolt to pull out of the lever.   One of these nuts had been off for more than two weeks, and the remaining one was therefore more likely to come off the bolt by reason of the jarring of the machinery. This result actually occurred, and caused the injury to plaintiff.   The duty of defendant was to see that it was reasonably safe, and that was a continuing duty, that required supervision and inspection.   If it was out of repair for a length of time that with proper supervision and inspection it could reasonably have been known and remedied, then negligence existed in not exercising that supervision and inspection. Whilst the defendant had in its employ a machinist, whose duty it was to look after the machinery and do the repairing, yet that would not relieve the defendant from liability, as its duty was a permanent, continuing one, that could not be delegated to another so as to relieve it from liability because of the negligence of that other to whom that power and duty were delegated.    (*Chicago and Northwestern Railway Co.* v. *Jackson*, 55 Ill. 492; *Chicago and Northwestern Railway Co.* v. *Swett, Admr.* 45 id. 197; *Chicago, Burlington and Quincy Railroad Co.* v. *Avery*, 109 id. 314; *Columbus, Chicago and Indiana Central Railway Co.* v. *Troesch*, 68 id. 545; *Moynihan* v. *Hills Co.* 146 Mass. 582.)   Defendant's contract with the servant was that it would exercise reasonable and ordinary care and diligence in providing and keeping in repair safe tools and machinery for the servant's use, and the machinery being out of repair for the length of time shown by this evidence, if its condition was not actually known by the master it was ignorant of it through its own negligence or want of care.   It knew, or ought to have known, the defects which caused the injury. *Schooner "Norway"* v. *Jensen*, 52 Ill. 373.

It is urged that the plaintiff himself did not exercise due care, and in support of this contention it is insisted that he had actual notice of the defective machinery, or by the exercise of diligence might have known of it, and neither gave notice to the defendant nor abandoned the work. The actual notice of the defects is sought to be brought home to him mainly by testimony as to his declarations, made after the accident, as to the cause of the injuries to him. He denied all knowledge, and claimed those statements were made on information received after the accident. His duties did not require him to be in charge of the machinery, and his labor was only incidental to it, so that it can not be held that the want of knowledge on his part was negligence. But however this may be, the verdict of the jury was against this contention of appellant, and the affirmance by the Appellate Court of the judgment entered on that verdict is conclusive on this court that the plaintiff did not have actual notice of the defects of the machinery, nor was he guilty of negligence in not becoming aware of the defect.

It is argued by appellant that Costello, who was in charge of the machinery and had knowledge of its defects, was the fellow-servant of plaintiff, and that his running the machinery in its defective condition with reference to the lever was the negligence of a fellow-servant that would defeat a recovery in this case, and counsel cite *Philadelphia Iron and Steel Co. v. Davis*, 111 Pa. St. 597, *Shaffer v. Haish*, 110 id. 575, and *Moynihan v. Hills Co.* 146 Mass. 586, as sustaining that view. On considering those cases we do not find them supporting appellant's claim on this question. The case of *Shaffer v. Haish* was where plaintiff was engaged in operating a machine for defendant, and it is said in that case: "It was the duty of the defendants to furnish those in their employ with ordinary machinery, such as, with reasonable care, may be used with safety," and then proceeding to the direct question involved in that case the court further say: "Was the ma-

34—148 ILL.

chine defective in its original construction, or had it become so by reason of use or other cause? There was certainly no evidence as to the first proposition. It was claimed, however, that the machine was defective and unsafe at the time the injury occurred." The court, then reviewing the evidence, finds that the last proposition was not sustained, so that plaintiff was not entitled to recover.

In the case of *Philadelphia Iron and Steel Co.* v. *Davis, supra,* the complaint was that the injury was sustained from the breaking of a fly-wheel, which, as alleged, was negligently constructed, out of repair, and unskillfully repaired. It appears that the fly-wheel weighed between four and five tons, and two clamps were placed by the superintendent—the managers and others having been consulted—for the purpose of preventing its sliding along the shaft, to which it had a tendency. Plaintiff was working in the mill between two and three o'clock on the morning of June 27, when one of the clamps flew off. The engine was stopped and some repairs made, and again started up with but one clamp. The superintendent of the works was not informed of the accident, though in the works at the time. Between five and six o'clock the remaining clamp gave way and injured the plaintiff. The court held, that had the injury to the plaintiff occurred on the breaking of the first clamp, the responsibility would have rested altogether with the defendant, for it could not have charged its engineer with the knowledge of the unsafety of an appliance which had been regarded as sufficient by its superintendent. The engineer had notice of the danger, and continued to run the engine without notice to the defendant, and the defect occurred within so short a time previous to the accident that no negligence could be imputed to the defendant in not knowing of the defect. The court in that case further held, the proximate cause of the injury was the carelessness of a fellow-servant. Had the master in that case knowledge of the breaking of the first clamp, and ordered or permitted

the engine to run in the condition it was after the first breakage, a very different question would have been presented.

In *Moynihan* v. *Hills Co. supra*, the court stated very fully ˙and clearly the rules applicable to the implied contract created by the hiring, whereby the master undertakes to use proper care in providing safe tools and appliances, and the limit within which the delegation of that duty is inconsistent with his duty, and the extent and circumstances within which any part of that duty may be delegated to a servant in keeping tools or appliances in repair, and the following propositions are stated: "First, there is that class of cases in which the condition of a machine as to safety is constantly changing with its use, so as to require from the persons tending it, as a part of the ordinary use of it, reconstruction or re-adjustment of parts, as they become worn out or displaced, from materials or new parts supplied by the master for that purpose. Such work is a part of the regular business of the servant in using the machine, and not of the master in maintaining it. Negligence in doing it is, as to all other employes, negligence of a fellow-servant. So far as the condition of the machinery depends upon this kind of attention, the master does his duty if he employs competent and suitable persons, and supplies them with everything needed for their work. A second class of cases includes those in which repair or reconstruction of a machine is necessary, of such a kind as is commonly done, or may properly be done, under the direction of the master, by servants engaged in the general business. Both parties to the contract must be presumed to have contemplated that such work would be done by fellow-servants of the employe, and he must therefore be held to have assumed all risks from their negligence in doing it. But this, it must be remembered, is a part of that work for the results of which, in the completed machine, the master agrees to hold himself responsible, so far as good results can be insured by his exercise of proper care, and so he is bound to bring to this department of the

business, either in his own person or by an agent, such intelligence, skill and experience as is reasonably to be required in one to whom, in an important particular, the safety of others is intrusted, and he is bound also to be reasonably diligent and careful in the use of his faculties. One who represents him in this field is not acting as a fellow-servant with his other employes, within the meaning of the rule which we are considering, but is his agent or servant, for whose care and diligence he is accountable. There may be still a third class of cases, in which a machine is of such a kind, and the nature of the business in which it is used is such, that the parties could never reasonably have contemplated that any servants employed in the business would build or reconstruct it. A proprietor might buy such a machine, or send an agent or servant to buy it. In either case the purchase would be in the line of the master's duty, and he would be liable for the consequences of negligence in making it. He might hire privileges and men in a machine-shop in a distant city, and build it there. His servants in that work would not be fellow-servants with an employe engaged in an entirely different business, and under the doctrine of *respondeat superior* he would be held liable for the consequences of their negligence. If he saw fit to construct or reconstruct it, in the same way, in or near the building in which it was to be used, the result would be the same. Upon our hypothesis it would be inconsistent with his implied contract to employ fellow-servants of his employes in this work, and he therefore could not relieve himself from his general obligation as to the safety of his machinery by setting up that his servants in the construction or reconstruction were fellow-servants with his employes in the business in which it was to be used."

This case must fall within the limits of the first rule, the evidence in this record showing the loss of a nut, with the circumstances showing it to have been the duty of the master to know of that fact. There is an entire absence of evidence

showing the master to have furnished a nut to take the place of that lost, as was his duty, and however trivial the cause of the injury, the injury itself or liability is not lessened; and though two nuts were found after the injury, near the lever, yet it is not shown that both belonged to the eye-bolt.

The cases cited are not inconsistent with what was held in *Chicago and Northwestern Railway Co.* v. *Swett, supra,* and *Columbus, Chicago and Indiana Central Railroad Co.* v. *Troesch, supra,* that "the doctrine that an action by a servant will not lie against his principal for an injury sustained through the fault of a fellow-servant, applies only to cases where the injury complained of occurred without the fault of the principal, either in the act which caused it or the employment of the person who committed it." Even if Costello and the plaintiff were fellow-servants, the fault in the master in not exercising proper care in providing means for repairing the machinery was such that it would not defeat a recovery. Costello having knowledge of the defects, not communicated to the plaintiff, and the fact appearing that Costello, without objection, or notification to defendant, operated defective machinery, the law would be that a co-servant, although he has assumed the risk of negligence on the part of his co-servants, can not be said to have assumed the risks incident to their negligence in using defective machinery.

In the argument of a case of this character the financial condition of the parties to the suit is not a question for the jury, and remarks of comparison in that behalf, in argument, are improper, and deserving condemnation. The remarks of counsel for plaintiff, in the closing argument, were of this character, and went further, and when the attention of the court was called thereto, counsel was directed to "keep within the record." Questions of this character have been before this court in different cases, notably in *Chicago and Alton Railroad Co.* v. *Johnson,* 116 Ill. 210, and *Felix* v. *Scharnweber,* 119 id. 448, in each of which it was held the remarks in the particular

case were not of a character to require reversal. Cases may arise where the impropriety and probable effect of such language in argument, of itself, would be cause for reversal, on the mere objection of a party to the suit and the incorporation of it in the record; but where the language falls short of being of that character, that result would not necessarily follow. In this case, on the objection being made and counsel being directed by the court that he must keep within the record, that was a ruling by the court on the question, and it not appearing that the defendant was in any way injured, it must be held the language used in argument here is not reversible error.

It is assigned as error that the court limited the time for argument before the jury to one hour and thirty minutes to each side. It is clearly within the legal discretion of the court to limit the time for argument, and nothing in the facts presented by this record, either in the points involved or the testimony to be reviewed, shows the time limited was unreasonable. However, neither an objection nor exception to the action of the court in this regard is in this record.

In the second count of the declaration the words "plaintiff" and "defendant" were in some portions of the count transposed, and in other parts properly used. It is apparent from the context of that count that the transposition was a clerical error, and was clearly amendable on trial or after verdict. If instead of the words "plaintiff" and "defendant" the names of the parties had been inserted in that count, it would have literally come within the terms of the tenth subdivision of section 6, chapter 7, of the Revised Statutes, entitled "Amendments and Jeofails," and by construction we hold it as within that provision, and not cause for reversal.

The second instruction asked by defendant was, that the jury should disregard the second count as not sufficient on which to base a verdict. That instruction was refused, to which the defendant excepted. We hold that instruction was properly refused, as the clerical error was of that character

that the count was sufficient on which to base a verdict and sustain a judgment.

Other instructions were given and modified, being so given and modified in accordance with the rules applicable, as here stated. We find no error in giving and modifying instructions.

Certain instructions asked by defendant were refused, which is assigned as error. The instructions did not state a correct rule of law and were inapplicable to the facts presented. We find no error in the refusal of instructions.

Objection was made on the trial, by defendant's counsel, to certain questions put, on cross-examination of defendant's witness, by appellee's counsel, the tendency of which was to show there was a safer way to secure the nuts on the bolt and retain it in place. These questions were objected to, and overruled. These questions were improper. The issue was not whether the master might not have provided *better* machinery or inventions, or a better fastening for the bolt, but whether that employed was reasonably suitable and proper for the business. He is not compelled to adopt every new invention, or pretended or actual improvement, new or old. We hold these questions were improper, and the ruling on the objection thereto erroneous. But by the fifth instruction asked and given for defendant the jury were instructed that an action could not be maintained by plaintiff because there was a safe mode in which the business might have been conducted, the adoption of which might or would have prevented the injury. By the tenth instruction given for defendant the jury were instructed that the defendant was not bound to furnish the very best or most improved kind of machinery to be used in the business in which it was engaged, nor compelled to furnish machinery that was absolutely safe. By these instructions the improper evidence brought out on the cross-examination of the witness was obviated.

From a careful examination of the record we find no reversible error. The judgment is affirmed.           *Judgment affirmed.*