## THE NATIONAL SYRUP COMPANY

### *v.*

## ALBERT CARLSON.

*Filed at Ottawa April 1, 1895.*

1. TRIAL—*when case will not be taken from jury.* It is not error to refuse a peremptory instruction for defendant, where there is evidence tending to establish the facts necessary and sufficient to sustain a verdict.

2. APPEALS AND ERRORS—*sufficiency of release a question of fact.* The question whether a release from damages by an injured employee was executed with knowledge or under circumstances that would bind him, is one of fact, which will not be reviewed by the Supreme Court.

3. SAME—*credibility of witness will not be reviewed.* The question whether the credibility of a party was destroyed by his contradictory and conflicting testimony cannot be considered by the Supreme Court.

4. SAME—*motion must be made to exclude unresponsive answer.* An improper and unresponsive answer to a proper question will not be reviewed on appeal, unless a ruling of the trial court is taken upon a motion to strike out or withdraw such answer.

5. EVIDENCE—*knowledge of party signing release is competent.* Plaintiff in an action for personal injuries claiming that he was induced to sign a release by misrepresentations, and had no knowledge of its contents, may be asked whether, at the time he signed his name, he knew in any way that he was settling with the company for damages on account of his injury, but cannot state his understanding as to the purport or purpose of the paper.

*National Syrup Co.* v. *Carlson,* 47 Ill. App. 178, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Winnebago county; the Hon. JOHN D. CRABTREE, Judge, presiding.

This is an action for personal injuries, received by appellee through the alleged negligence of appellant. The case was before the Appellate Court for the Second District. The opinion of that court, when the case was first heard, is reported in 42 Ill. App. 178, and the judg-

ment, which was for $5000, was reversed and the cause remanded. The case was re-docketed and again tried before a jury, and a verdict returned for $3000, on which judgment was entered, and the defendant appealed to the Appellate Court, where the judgment was affirmed. 47 Ill. App. 178.

The material facts which the evidence tended to prove, as stated in the opinion of the Appellate Court, are as follows :

"Appellee had worked in the glucose factory for a former proprietor, and had worked there for appellant since March, 1889. His work was on the second, third and fourth floors. Just before December 8, 1889, he had been working on the day gang, and on that day, which was Sunday, he changed to the night gang. The factory ran night and day, and 140 men were employed. He came to the factory on that Sunday noon with his dinner pail, and met the foreman, who said that they did not have steam then and could not start the presses, and told him to go home and come back at nine o'clock that evening and help Mr. Swanson set the presses. As stated in the former opinion, there were two sets of stairs,—the main stairway on the south side, near the east end, and the other on the north side, about the middle of the building. Each had successive flights above each other, to the stories above. Appellee went up the south stairway to the second floor and crossed to the north stairway, and went up to the fourth floor, where his working clothes and lantern were, and left his dinner pail. He then went home, and at eight o'clock heard a whistle, which he supposed to be for the hands, and got his supper and went to the factory, where he arrived about nine o'clock. The factory was dark, but there were some employees in the building. He went up by the south stairway to the third floor, and there found his boss, Mr. Hade, and Mr. Swanson, whom he was to assist, and some person whom he could not distinguish, who had a light near the east end

of the room.    He asked Hade if he had work for him, and Hade replied that they had lots of work as soon as they were ready; that they had not got a light yet, and that he should go and change his clothes and get his lantern, and look after the press-cloths and get them ready.    The factory was supplied with electric lighting apparatus, but was not then lighted.    Running west from the south stairway, up which appellee had come, there were presses along the south wall.    North of them, and between them and the vacuum pans and pumps, there was a passageway, which ran west to and along the elevator, which was its north boundary at the point where the elevator was located.    West of the elevator the passageway turned north, and ran across the floor to the north stairway, the elevator being in the angle.    The elevator opening had posts at the corners, into which a railing two by four inches was framed at the ends and fastened by nails, as a protection around the hole in the floor.    The railing on the south side along the passageway had been taken away that day, and the elevator let down into the basement to raise a large vacuum pan in sections.    Appellant claims that the railing was off on Saturday, when appellee was at work about there, and the testimony of Erickson, the carpenter, and Linholm, the steam-fitter, is relied upon to prove it; but Erickson testified that he did not remember seeing it off Saturday, and Linholm said that he could not swear to it.    Appellee testified that he did not see it off, and Arthur McCarthy, an employee, who saw it off Sunday, did not remember seeing it off before.    On Sunday evening, when it was time to quit work for the day, Erickson, the carpenter, told Frank Bowers, who had charge of the carpenters and millwrights, that the railing ought to be fixed, and Bowers told him to do it the first thing in the morning.    A section of the vacuum pan, and the jack with which it had been elevated, occupied the south part of the passageway.

When appellee was told to get his clothes and lantern he started along this passageway, and Swanson walked behind him. Appellee held out his hands to find the railing, and walked into the open elevator hole and fell. The route taken was the one customarily traveled by appellee, and which he testified was the safest and best, usually. It is claimed that the railing was frequently off, but the evidence on the last trial does not justify the claim. The manner of its construction shows that it was not designed to be opened in the prosecution of the current business of the factory. If it had been so designed it would surely have been made to lift or swing, or would be removable like a bar; but it was fastened permanently with nails, and was not intended to be taken out except as any other permanent structure might be removed in case of necessity. It was sometimes removed for the purpose of putting in new and heavy fixtures requiring such removal, when it was again permanently fastened to the posts by nailing. There is no evidence that it had been off recently before the accident. On this occasion it was necessary to take the railing off, but it was left off at night when no longer necessary, after attention had been specially called to it, and when employees were expected to resume work that night. No warning was given of its condition, and there was no light to show the danger at a time when appellee had been ordered to be there, and when he and other employees were expected to go to work. Appellee came to the factory in pursuance of orders. He found others there, and found his boss, who told him to get his clothes and lantern. The factory was dark, and he was going to get his light so that he could see to get the cloths ready for the presses. He took the usual route along the passageway, where a railing was usually in place, permanently attached to the posts, without any notice of its being away."

What purported to be a release was offered in evidence by the defense, as follows:

"ROCKFORD, ILL., *Jan. 25, 1890.*

"In consideration of twenty-two and $\frac{50}{100}$ dollars to me paid by the National Syrup Company, I do hereby release and discharge the National Syrup Company from all claims and demands arising, or which may arise, from the injuries received by me on the 8th day of December, 1889.

A. CARLSON.

"Witness:    George B. Gregory,
           A. G. Everett."

The plaintiff testified that when he signed this paper he knew the company was not owing him, and when asked if he knew he was settling with the company when he signed it, answered: "I understand this paper was for the paymaster, to show the company where the money went. That is the way I understand it." It appears that during the time he was confined with his injuries, his wife had received from the company various sums of money. The plaintiff testifies that he was unable to read and write the English language, and it is not shown the paper was read to him, nor is his testimony in reference to the release contradicted. He was told he should sign his name for the money, and did so.

On the close of the plaintiff's evidence the defendant moved to exclude the same and instruct the jury to find for the defendant, which motion was denied. That motion was renewed at the close of all the evidence and again denied, when the defendant requested the court to instruct the jury to find for the defendant, which instruction was refused. From the judgment of the Appellate Court this appeal is prosecuted.

WALKER & EDDY, and A. D. EARLY, for appellant.

CHARLES A. WORKS, and WILLIAM MARSHALL, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court :

This court is asked to reverse the judgment in this case on the merits, it being insisted that the defendant is not shown to have been guilty of negligence. It is further urged that the plaintiff was guilty of such contributory negligence that he is not entitled to recover. These questions are sought to be brought before this court by the assignment of error that the court erred in refusing the instruction to the jury to find for the defendant. It is further urged that the court erred in overruling defendant's objections to the admission of certain evidence.

It is a familiar principle that the master owes to his servant the duty of furnishing him a reasonably safe place to work, and negligence in the discharge of that duty on the part of the master, because of which the servant is injured when in the discharge of his duties, he at the time using ordinary care for his own safety, will cause a liability on the part of such master to respond in damages. (*Mayhew* v. *Sullivan Mining Co.* 76 Me. 100; *Chicago and Northwestern Railway Co.* v. *Swett*, 45 Ill. 197; *Illinois Central Railroad Co.* v. *Welch*, 52 id. 183; *Toledo, Peoria and Warsaw Railway Co.* v. *Conroy*, 68 id. 560; *Toledo, Wabash and Western Railway Co.* v. *Ingraham*, 77 id. 309.) To allow the premises or machinery to be and remain out of repair when such condition is known, or by the exercise of reasonable diligence might have been known and prevented, is negligence on the part of the master. (*Monmouth Mining and Manf. Co.* v. *Erling*, 148 Ill. 521; *Chicago Anderson Pressed Brick Co.* v. *Sobkowiak*, 148 id. 573; *Northern Pacific Railroad Co.* v. *Herbert*, 116 U. S. 642; *Leahy* v. *Southern Pacific Railroad Co.* 65 Cal. 150.) And where the duties of the servant require him to work at night, the failure to furnish light sufficient to enable him to do so with reasonable safety is negligence on the part of

the master. (*Chicago and Northwestern Railway Co.* v. *Taylor*, 69 Ill. 461.) The servant has the right to assume the master will perform the duties imposed on him by law, and act on such presumption, using reasonable care for his own safety. *United States Rolling Stock Co.* v. *Wilder*, 116 Ill. 100; *Pullman Palace Car Co.* v. *Laack*, 143 id. 242; Bishop on Non-contract Law, secs. 647, 648.

The evidence in this record warrants the finding of facts as found by the Appellate Court. It cannot be said there was not evidence tending to show negligence on the part of the appellant, and that the appellee was in the exercise of ordinary care. These facts proven, with proof of the injury, would sustain the verdict on the question of negligence. The Appellate Court so found. Where there is evidence tending to establish the facts necessary and sufficient to sustain a verdict, it has been often held, and the rule may be declared settled in this State in such cases, that it is not error to refuse a peremptory instruction to find for the defendant. *Lake Shore and Michigan Southern Railway Co.* v. *O'Conner*, 115 Ill. 254; *People* v. *People's Ins. Exchange*, 126 id. 466; *Hamburg-American Packet Co.* v. *Gattman*, 127 id. 598; *Chicago and Northwestern Railway Co.* v. *Snyder*, 128 id. 655; *Hodges* v. *Bearse*, 129 id. 87; *Wight Fire Proofing Co.* v. *Poczekai*, 130 id. 139.

The question as to whether the release was executed with knowledge on the part of appellee, or under circumstances that would bind him, was one of fact, settled by the adjudications of the Appellate and trial courts.

The contention on the part of appellant that the credibility of the plaintiff was destroyed by the contradictory and conflicting character of his testimony on the two trials, cannot be considered by this court. It was held in *Chicago and Northwestern Railway Co.* v. *Dunleavy*, 129 Ill. 140: "We have nothing to do with any question as to the preponderance of the evidence, or the credibil-

ity of witnesses, or the force to be given to the evidence, having a tendency merely to impeach their veracity. The only question is, whether any evidence was given which, if true, would have tended to support a verdict for plaintiff." The principle thus announced is binding on this court by reason of section 90 of chapter 110 of the Revised Statutes, and has been adhered to by its adjudications.

The evidence that was admitted over defendant's objection, to which our attention is called by appellant's brief, is with reference to the execution of the release. On the re-direct examination the plaintiff had testified that he could not read English and the release was not read to him, and he was told to sign his name for the money so his wife could draw it, etc. When the following question was asked: "At the time you signed your name on this paper, did you know in any way that you were settling with the company for damages on account of your injury?" it was objected to by counsel for the defendant, and the objection was overruled, to which the defendant excepted. The subject matter of inquiry was as to whether plaintiff had been induced to sign the release by reason of any misrepresentations, and whether he had knowledge of what he was signing,—knowledge from any source; and such being the subject of inquiry the question was proper, and it was not error to overrule the objection. The witness answered: "I understand this paper was for the paymaster, to show the company where the money went. That is the way I understand it." The answer was not directly responsive to the question. It was held in *Hewitt* v. *Clark*, 91 Ill. 605, that a witness ought not to be permitted to state "his inference from what was said, or his understanding. To permit a witness, in answer to such question, to say, 'it was my understanding,' etc., is erroneous." The question was proper, but the answer was improper and not responsive. No motion was made to strike out or withdraw the answer,

however. The court was not called upon to rule on the propriety of the answer as made, and it cannot be raised for the first time on appeal.

We find no error in the record, and the judgment of the Appellate Court is affirmed.      *Judgment affirmed.*