JOY MORTON & CO.

*v.*

JOHN ZWIERZYKOWSKI.

*Opinion filed October 24, 1901.*

1. NEGLIGENCE—*what does not preclude recovery by injured servant.* A servant engaged in unloading salt from a vessel by means of iron buckets equipped with iron wheels, is not precluded from re-covering for an injury received by one of the wheels falling from a bucket while it was being lowered, by the fact that the master had provided an extra bucket for use when the others became defective, where the matter of the repair of the buckets and the use of the extra one was left to the hoisting engineer, who, in that respect, was the representative of the master.

2. EVIDENCE—*what not improper re-direct examination.* If the de-fendant in a personal injury case is permitted, on cross-examina-tion, to ask the plaintiff if the defendant did not want him to go back to work after his recovery, it is not improper to permit the plaintiff to state, on re-direct examination, that the defendant's offer was upon the condition that he would sign a release.

*Joy Morton & Co.* v. *Zwierzykowski*, 91 Ill. App. 462, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Supe-rior Court of Cook county; the Hon. ARTHUR H. CHET-LAIN, Judge, presiding.

LEE & HAY, (JOHN A. POST, of counsel,) for appellants.

FRANCIS J. WOOLLEY, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The appellee recovered a judgment in the superior court against the appellants because of an injury to his right hand, received by him while employed by them in unloading salt from the hold of a vessel in which it had been transported to Chicago in bulk. The Appellate Court affirmed the judgment.

The salt was unloaded by means of heavy iron buckets, weighing upwards of four hundred pounds, which were lowered and raised by machinery operated from above by an engineer of the defendants. These buckets had iron wheels attached, weighing several pounds each, which were used to roll the buckets, when they were detached from the hoisting apparatus, to places for convenient use in removing the salt. The men employed in the work were divided into two parties, consisting of three or more in each party, working in two different hatches of the boat. Each party was at the time using three buckets. The defendants had provided seven buckets, one of which was kept above, to be used in case of necessity. Besides the engineer, whose duty it was to operate the hoisting apparatus and to keep the buckets in repair, there was another employee, who was called the "hooker-on," who, when the bucket was lowered, detached it, and when it was filled and in proper position, attached it to the hoisting apparatus. At the time of the accident appellee, after having rolled his bucket to its proper place, was standing holding it, with his right hand upon the rim, while it was being filled by his associates, when another bucket was being lowered to be filled by the other party. The evidence tended to show that one of the wheels of the bucket then being lowered was insecurely attached to the bucket by a worn and defective pin upon which the wheel

turned, and while this bucket was descending the wheel fell or was knocked from the bucket, and fell upon and struck the plaintiff's right hand and greatly and permanently injured it.

The defendants below asked the court to instruct the jury to find them not guilty, and the refusal of this instruction is the chief error assigned and relied upon in this court to reverse the judgment.

The jury were justified in finding, from the evidence, that the plaintiff did not know of the defect in the bucket and that the defendants did know of it, and for a sufficient length of time prior to the accident to have repaired it, but failed to make such repairs. The accident did not happen because of the negligence of the engineer in lowering the bucket, nor of the "hooker-on," but on account of a defective condition of the bucket or its attachments, so that, even if it were considered that the engineer and the "hooker-on" were, while engaged in unloading the cargo, fellow-servants with the plaintiff in that work, the plaintiff's right to recover would remain unaffected, for it is the duty of the master to furnish his servant implements and appliances reasonably safe with which to perform the task assigned to him, and the facts as found show that appellants failed in this duty and that such failure was the cause of the injury.

But the point most earnestly insisted on is, that the appellants furnished seven buckets, so that there was, as it is claimed, an extra one ready to be used in the place of any one of the others which should prove defective, and that if there was any negligence in using a defective bucket it was the negligence of the employees themselves, including the plaintiff, and not that of the employers. In support of this position taken by counsel they cite *Gregan* v. *Marston*, 126 N. Y. 568, *Vandiweel* v. *Nat. F. Co.* 84 Wis. 636, *Knare* v. *Troy S. Co.* 139 N. Y. 369, *Prescott* v. *Ball E. Co.* 176 Pa. St. 459, *Weber* v. *Piper*, 109 N. Y. 496, *Kehoe* v. *Allen*, 92 Mich. 464, *Thyng* v. *Fitchburg Railroad Co.*

156 Mass. 13, *Railroad Co.* v. *Pitly*, 67 Mass. 255, and other cases. The facts in each of the cases cited are materially different from those in the case at bar. In *Gregan* v. *Marston, supra,* chiefly relied on, the employee was killed by the breaking of a rope and the consequent fall of a coal bucket upon him, while he was employed in unloading coal from the hold of a vessel. The evidence showed that after the use of two or three weeks the ropes used to draw up the buckets would become worn and unsafe, and that this fact was apparent and known to the employees, and that the employer had provided an abundance of new ropes, of the proper size and lengths, with which to re-place the worn and unsafe ones, upon notice by the workmen. The court said: "The workmen, there-fore, were left in a position of perfect safety as to the sufficiency of the falls (ropes) against everything save their own negligence or error of judgment. The rope was swinging before their eyes, and would disclose its approaching weakness on the surface before it became rotten or pulpy within, and they were able to know how long it had been used, and so whether prudence required it to be changed. They were at liberty, and knew they were at liberty, to supplant one which exhibited marks of weakness with another both new and sufficient, from the supply kept on hand," and it was held that the master was not liable. But in that case the court recognized the rule that it is the duty of the master to furnish safe appliances and to keep them safe for use, and the substance for the holding was only that the master was not liable for an injury to the servant caused by the latter's failure to supplant a defective part of an appliance with a new and safe one provided by the master for the purpose, where it is a part of the work of the servant to make the change. In the case at bar, even if the evidence was uncontroverted—and it was not—that the extra bucket was fitted and intended to take the place of any one of the others which should become unfitted or

unsafe for use, still, under the evidence, the buckets and their repair were committed to the care of the engineer, who, in performing that duty, was the representative of the master and a vice-principal, and not the fellow-servant of those who were required to use the buckets which he furnished and sent down to them. His negligence in that regard was therefore the negligence of the master, and not of a fellow-servant. (*Monmouth Mining and Manf. Co.* v. *Erling*, 148 Ill. 521; *Leonard* v. *Kinnare*, 174 id. 532; *Goldie* v. *Werner*, 151 id. 551; *Westville Coal Co.* v. *Schwartz*, 177 id. 272.) That the engineer, as to his separate duties of repairing the buckets, was not a fellow-servant of the plaintiff, and that the plaintiff was not guilty of contributory negligence, were facts finally established by the judgments below. There was no error in refusing the instruction to find for the defendants.

It is next said that the court erred in admitting to the jury testimony for the plaintiff over the defendants' objections. It appeared from the evidence that the defendants continued to pay the wages of the plaintiff fourteen weeks after he was injured, although he rendered no service, and on cross-examination of the plaintiff by defendants' counsel he was asked whether the defendants did not want him to go back to work for them, and he replied that they did. On re-direct, plaintiff's counsel, over defendants' objection, was permitted to ask him what was said to him by the defendants when they asked him to go back to work, and the reply was, in substance, that they said that he would have to sign something to the effect that they were not in fault in the matter of his injury. If it was any advantage to the defendants to prove that they asked the plaintiff to return to their service they cannot complain that the court permitted him to testify to what was said between them at the time on that subject and that the offer was upon the condition that he would sign a release. We are unable to discover any error in the ruling of the court.

Error has also been assigned upon the ruling of the court in allowing certain hypothetical questions to be put to and answered by Dr. Farnum, an expert witness produced by the plaintiff. These questions were intended to elicit the fact that it would be difficult to procure a union of the broken bones in a case (as of the plaintiff's) where there was a compound comminuted fracture of the third metacarpal bone and the wound had become infected, and that, where the bones had failed to unite, an operation long after the injury could not be expected to bring good results. The hypothesis was based upon the evidence then before the jury, and the questions, we think, were proper.

We have given the case a careful examination and find no substantial error in the record. The judgment will therefore be affirmed.   *Judgment affirmed.*