Chicago Hair & Bristle Co. v. Mueller.

## Chicago Hair and Bristle Co. v. Sebastian Mueller.

106    21
a203s  558

1. MASTER AND SERVANT—*Injury Resulting from the Exercise by the Foreman, as Vice-Principal, of the Authority Conferred upon Him by the Master.*—When the negligent act complained of results directly from the exercise by the foreman, as vice-principal, of the authority conferred upon him by the master over his co-laborer, the master is liable.

2. SAME—*Servant Ordered to Dangerous Place.*—A servant ordered by one in authority to do a dangerous act is not required to balance the degree of danger and decide with absolute certainty whether he may safely do the act, and even if he had knowledge of such danger, it would not defeat a recovery for injury, if in obeying his master's command he acted with that degree of prudence which an ordinarily prudent man would have used under the same circumstances.

3. SAME—*Assumed Risk and Contributory Negligence.*— Assumption of risk rests on the law of contracts. Contributory negligence, on the other hand, rests in the law of torts.

4. SAME—*Servant Assumes Ordinary Risks.*—The servant assumes all the risks ordinarily incident to the employment, and is presumed to have contracted with reference to such risks; but this rule presupposes that the master has performed the duties of caution, care and vigilance which the law casts upon him. He does not assume risks that are unreasonable or extraordinary, nor risks that are extrinsic to the employment, nor those of the master's own negligence.

5. SAME—*Law Does Not Imply Notice of Dangers Arising out of Extraordinary Circumstances.*—While a servant assumes risks of known dangers, such as are so obvious that knowledge of their existence may be fairly presumed, yet the law does not imply that he has any notice of dangers arising out of extraordinary circumstances.

6. SAME—*Where Servant Knows of Defects but is Not Aware of Risks.*—The servant is not chargeable with contributory negligence, if he knows that defects exist, but does not know by the exercise of ordinary prudence that risks exist.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge presiding. Heard in the Branch Appellate Court at the March term, 1902. Affirmed. Opinion filed February 13, 1903.

Statement.—The appellant carried on a business of buying hair and after properly preparing it would form it into bales. The company owned a large inclosed shed in which these bales were stored and from which they would be taken as sales and shipments were made. In length it was about

140 feet, extending north and south, forty feet wide and from about sixteen to twenty feet in height. In the middle of both the east and west sides were large doors twelve feet wide and about twelve feet high so that loads of bales could be driven into the shed. The shed was wide enough to hold eight rows of bales, being piled on top of each other six bales high, and the rows running north and south. The hair was not all of the same grade, and each bale would have a label indicating its grade. On September 1, 1899, appellant company wished to fill three cars with these bales of a certain grade. At that time there were practically eight full rows of bales in the south end of the shed to within ten or fifteen feet of the doors. Part of the bales which they wished were at the south end of rows "3" and "4" and "5" and "6" counting from the east. The north end of these rows consisted of a kind not desired at that time. So when the men began to work on the morning of the day of the injury they tore down the bales of rows "3" and "4," beginning at the north or end nearest the door, and placed them on the outside of the shed merely to have enough out of the way, thus making an alley between rows "2" and "5," for the object was to get the bales in the south part of the rows to fill in the cars. Some of the men piled the bales on the car which stood near the door, others handled the trucks, taking the bales to the car from the scales, which were near the door, and three men were at work in the shed taking the bales from the piles and rolling them up to the scales at the door, one man throwing down the bales and the other two taking them to the scales. On the day of the accident Sebastian Mueller, appellee, worked until about 2:30 p. m. trucking bales from the scales to the car, and Herms, Heinlein and Sprafske worked in the shed, Herms working on top of the piles throwing bales down and the other two taking them away. Weingart, who was in charge of the men, was at the scales, weighing. At about 2:30 p. m., Mueller was, asked to change places with Sprafske, which he did, and from that time until he was hurt, about 5 p. m., he continued to

carry bales from the south part of the shed up to the scales.   At about five o'clock, two bales from the end of row "6" fell upon and injured appellee.

The declaration contained four counts.   In the first it is set forth that plaintiff was required to work in the immediate vicinity of these bales; that the defendant negligently suffered the said pile of bales to be in a loose, overhanging and insecure position, by means of which negligence certain bales suddenly fell upon the plaintiff.   In the second count it is alleged that plaintiff was required in the course of his employment to work in the immediate neighborhood of such bales, yet the defendant negligently so piled and managed said bales that the same were in an unsafe and dangerous condition and liable to fall; that said defendant by due care could have had notice in time to have remedied the same before injury; that said danger was unknown to the plaintiff.

In the third count it is alleged that the plaintiff was engaged in removing these bales and that they were so dangerously arranged that they were liable to fall of themselves; that plaintiff was ignorant of this danger and unable to discover it because of insufficient light; that defendant negligently induced plaintiff to work about said piles and negligently failed to give him, plaintiff, reasonably sufficient notice of said danger, either by informing him thereof or furnishing him sufficient light to have enabled him to discover it.   And in the fourth count plaintiff alleges that he was required to work in the immediate neighborhood of this pile of bales so as to be exposed to great danger in case said bales fell; that defendant negligently removed a part thereof in such manner as to leave the remainder of said pile insufficiently supported and liable to fall and negligently ordered the plaintiff to perform certain work close to said pile and negligently failed to inform plaintiff of said danger; that while plaintiff with due care and in ignorance of said danger was engaged in his work near said pile, certain of said bales suddenly fell from said pile by reason of said insecure position and struck and injured said plaintiff.

A jury trial resulted in a verdict for $6,500, and a judgment thereon was entered.

A. B. MELVILLE and F. J. CANTY, attorneys for appellant; J. C. M. CLOW, of counsel.

FRANCIS J. WOOLLEY, attorney for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Appellant asserts that appellee saw or ought to have seen the danger and hence under the facts of this case he assumed the risk of being injured and can not recover.

The evidence is brief and plain. The company had a room, where it stored bales of hair. Each bale was five feet long, three and one-half feet wide and two and one-half feet thick and weighed about 500 pounds. Bales of six to a height of about fifteen feet were placed against each other in rows, beginning at the south end of the storeroom. The first bale was placed on the floor within about twenty-one inches of the south wall of the room; the second on the first a few inches nearer the wall and in the same manner the others were piled until the sixth bale at the top of the pile rested against the south wall and so projected about twenty-one inches further south than the bale at the bottom of the pile, and the second pile was placed in a similar manner and against the first pile, each bale extending a few inches south of the one immediately beneath it. In this manner pile after pile was placed, making a row extending from the south end north toward the doors. The safe way, therefore, of removing these bales from storage was to begin at the north end of a row. September 1, 1899, appellant had occasion to remove from its house some bales of hair of a quality which chanced to be piled as aforesaid in the south end of certain of the rows, and instead of removing all the bales north of those wanted, found it more convenient to take them out by beginning at the south end of the rows. Hermes, the company's assistant foreman, began at the south end and throughout the afternoon of September 1, 1899, the day when appel-

lee was hurt, threw down the bales and they were taken out to the scales by Mueller, the appellee, and Heinlein. About five o'clock it was thought a sufficient number had been taken out to fill the car. When Hermes came away, there had been taken down about fifteen feet of rows "5" and "6," measuring from the south end, and left unbraced or unsupported the south end of row number 6, which end was a pile of six bales resting one upon the other and projecting to the south as above described. The three men went outside. Hermes examined the car and found that it would carry two more bales. He then from the car called to Mueller and Heinlein to bring out two more bales. They went within ten or fifteen feet of the south end of the store-room and brought one and returned for the second. Mueller, having preceded Heinlein, had lifted up the second bale which lay about five feet from row number 6, when two bales fell from the top of the south pile of row six, striking and injuring Mueller. In the south end of the building was a window eleven feet from the floor, two feet eleven inches square. Witnesses say that the light was dim, but a few moments after coming in the eye became adjusted to the light and then the surroundings could be seen; that it was more difficult to see at five than earlier in the afternoon. Both Mueller and Heinlein testify that they did not see the condition of the end of row six until it began to fall. It was their last trip and they say that they were not there long enough before the bales fell for their eyes to become adjusted to the light. One witness states that five minutes after the accident he went in and it was so dark he stumbled over a bale. Counsel for appellant urges several defenses; one is, that the injury to appellee was caused through the negligence of a fellow-servant; that it was Hermes who left the south end of row six in its dangerous condition; that Hermes was a fellow-servant of appellee and therefore no recovery can be had. It is true that there are circumstances where the foreman can be held to be a fellow-servant, where the foreman abdicates the position as vice-principal and acts as a

co-laborer with the servant, but we think not in this case.
Hermes was foreman with authority to hire and discharge
men. Both the foreman and superintendent appreciated
the danger of removing the bales from the south end first.
On the day of the accident Hermes, the foreman, spoke to
Weingart, the superintendent, about the danger and said
" it is a bad thing to take the bales out from the south end,"
and Weingart replied to Hermes that he knew it and fur-
ther said, " You had better go up on the piles and throw the
bales down yourself." After thus calling the attention of
his superior to the danger of removing bales from the south
end of the rows, Hermes, the foreman, climbed up on top
of the bales, took exclusive charge and did all the work of
throwing them down onto the floor, and this record will
be searched in vain to find that Hermes during the after-
noon gave Mueller or Heinlein a single opportunity to see
the six bales of any pile standing projecting and unsup-
ported. It is entirely probable that the condition which
obtained with the south end of row six, existed but once
that day, and then at the time of the accident.

Appellee was but a common laborer engaged in the
severe manual labor of taking out these heavy bales, and
sustaining no such relations toward his foreman in the
place or character of his work as imposed upon him the
duty to watch and warn Hermes or to guard himself from
the negligence of his foreman. It can not be said that
there was as little danger in going about these rows after
as before Hermes came down. While he was there bales
did not fall upon the workmen. It was fairly and reason-
ably to be presumed by Mueller that it was because the
bales could not fall without being pushed off or because
Hermes did not allow them to project over so they could
fall. Unless Mueller had reasonable grounds to believe
that the bales would fall and the place was unsafe, he had
perfect right to assume that his master would furnish him
a reasonably safe place in which to work. Mueller did not
return of his own motion to the place where and when he
was injured. He had gone out with his foreman. He

afterward brought in bales to the southeast corner of the house, but did not and had no occasion to go south of row six, until his foreman ordered him to go in and bring out the last two bales. It was in obeying this negligent order that Mueller received his injury. At that time, Hermes was not present in the building and there is no evidence tending to show that Mueller knew how his foreman had left the end of row six, but he was ordered to go to that place and get the bales. When the negligent act complained of results directly from the exercise by the foreman as vice-principal, of the authority conferred upon him by the master over his co-laborer, the master will be liable. Chicago & Alton R. R. Co. v. May, 108 Ill. 288; Norton Bros. v. Nadebok, 190 Ill. 595; Union Show Case Co. v. Blindauer, 175 Ill. 325; Westville Coal Co. v. Schwartz, 177 Ill. 272; Morton & Co. v. Zwierzykowski, 192 Ill. 328. " A servant ordered by one in authority to do a dangerous act is not required to balance the degree of danger and decide with absolute certainty whether he may safely do the act, and even if he had knowledge of such danger, it would not defeat a recovery for injury, if, in obeying his master's command, he acted with that degree of prudence which an ordinarily prudent man would have used under the same circumstances." Illinois Steel Co. v. McFadden, 196 Ill. 344. Under the evidence and the law of this case, the appellee is not precluded from recovery because the acts complained of were those of a fellow-servant.

From a careful review of the evidence we think that the jury were justified in finding that the defendant through its foreman was negligent in leaving the particular end pile of row six, of six bales in height, overhanging and unsupported, and under these circumstances sending to the place of danger Mueller, who, as the evidence tends to show, did not anticipate that Hermes would manage the pile differently from the way he had previously, and did not know that the pile was overhanging in such a way as to fall. However, counsel for appellant further insists and devotes much of his brief to the proposition that the court

erred in giving instruction number eight on the doctrine
of assumed risk. In this instruction the court told the
jury that an employe does not assume all the risks incident
to his employment, but only such as are usual, ordinary,
and remain so incident after the master has taken reason-
able care to discover and prevent or remove them, or if
extraordinary, such as are so obvious and expose him to
danger so imminent, that an ordinarily prudent and careful
man would anticipate injury as so probable that in view of
it he would not enter upon or remain in the employment.
Counsel claims that this instruction eliminates the defense
of assumed risk as to unusual dangers, and makes the liabil-
ity of defendant depend entirely on whether or not the
servant was guilty of contributory negligence in remaining.
Great industry has been displayed in collecting the author-
ities which differentiate between the two doctrines of
assumed risk and contributory negligence. "Assumption
of risk" rests on the law of contracts. "Contributory
negligence," on the other hand, rests on the law of torts.
Bodie v. C. & W. C. Ry., 39 S. E. Rep., p. 715.

It is very doubtful whether there is any evidence in the
record of the case at bar tending to show an assumption of
unusual risk on the part of Mueller, and if not, even though
instruction number eight were wrong, still it would be in
this case harmless error.

The position of our Supreme Court as to the doctrine of
assumed risk may be briefly stated. The servant assumes
all the risks ordinarily incident to the employment, and is
presumed to have contracted with reference to such risks,
but this rule presupposes that the master has performed
the duties of caution, care and vigilance which the law
casts upon him.

The servant does not assume risks that are unreasonable
or extraordinary, nor risks that are extrinsic to the employ-
ment, nor those of the master's own negligence. Pullman
Palace Car Co. v. Laack, 143 Ill. 242; Consolidated Coal
Co. v. Haenni, 146 Ill. 614; City of LaSalle v. Kostka, 190
Ill. 130.

While a servant assumes risks of known dangers such as are so obvious that knowledge of their existence may be fairly presumed, yet the law does not imply that he has any notice of the dangers arising out of extraordinary circumstances.    Chicago & Alton R. R. Co. v. House, 172 Ill. 601; Ill. Steel Co. v. Bauman, 178 Ill. 351.

From the last case the Supreme Court in discussing the question of assumed risk have quoted the following language, being substantially the words of said instruction number eight: " An employe does not assume all the risks incident to his employment, but only such as are usual, ordinary, and remain so incident after the master has taken reasonable care to prevent or remove them, or if extraordinary, such as are so obvious and expose him to danger so imminent that an ordinarily prudent and careful man would anticipate injury as so probable that, in view of it, he would not enter upon or remain in the employment." Slack v. Harris, 200 Ill. 96; Alton Paving Brick Co. v. Hudson, 176 Ill. 270; W. C. St. R. R. Co. v. Dwyer, 162 Ill. 482.

Whatever may be the doctrine on this subject elsewhere, or advanced by some text writers, we understand that the instruction in question correctly states the law, but the Supreme Court has nowhere approved of this statement of the law as sufficiently plain and clear for the jury, upon the somewhat complicated subject; and because we do not reverse for the giving of the instruction, we do not wish it inferred that we approve of its form as an instruction for the jury.

In the case at bar, even if Mueller had notice of the overhanging of the bales which fell, it does not necessarily follow that he had any knowledge of the risk which might result from such defect.    It is by no means evident that an ordinarily intelligent man could tell without mathematical computation just how many inches one of those bales could project over the one beneath it and not fall.    The servant is not chargeable with contributory negligence if he knows that defects exist, but does not know by the exercise of

ordinary prudence that risks exist. Ill. Steel Co. v. Schymanowski, 162 Ill. 447; Swift Co. v. O'Neill, 187 Ill. 337: Union Show Case Co. v. Blindauer, 175 Ill. 325.

Some other instructions are subject to minor criticisms, but are in substance correct. Even if exceptions were properly preserved to all the evidence on the subject of placing braces at the ends of rows other than six, still we find no error in admitting this evidence in view of the averments of the declaration. It was entirely proper to show what was a safe manner in which to support these overhanging piles and how defendant was accustomed to support them.

After a thorough consideration of the entire record, we think substantial justice has been done. The judgment of the Superior Court must therefore be affirmed.