### JENNINGS *against* SHERWOOD and others.

Though the construction of a written document is a matter of pure law, where the meaning is to be collected from the document itself; yet where the meaning is to be judged of, by extrinsic circumstances, the construction is usually a question of fact for the jury.

Therefore, where the defendants in a case involving their right to fill up a certain creek, introduced parol proof of an agreement in writing, made many years ago, and since lost, which contained no direct recognition of the right in question, but from which, in connexion with a variety of extrinsic circumstances, they sought to make out a recognition of such right ; it was held, that it might be properly left to the jury to determine, whether that agreement, in any manner, recognized such right.

Where the plaintiff, claiming a right to the use of water upon his meadows, by the influx and reflux of the tides, through a passage called *New Creek,* in consequence of his having had the enjoyment of the water in that way, for a period of twenty-one years, brought his ac-

tion against a neighbouring mill-owner, for a disturbance, by filling up *New-Creek ;* the defendant, admitting the fact, rested his defence on an agreement, made between the parties, within the last fifteen years of the plaintiff's enjoyment, to this effect, *viz.* the defendant, in order to procure more water, proposed to the plaintiff, that if the plaintiff would permit him to erect a dam *West* of *New-Creek,* he would so construct it, that flood-gates could be put on either side, so that when the plaintiff wished to get his hay, the defendant would shift the gates and keep the water out, and when the season for getting hay was over, he should be permitted to put the gates on the other side, and keep the water in, for the use of his mill ; which proposition was accepted by the plaintiff, he being willing to gratify the defendant, provided his meadows were not to be injured by it, and thinking it would be a benefit to him to have the water kept from them, during the season of getting hay ; it was held, that such agreement contained no recognition of any right in the defendant to fill up *New-Creek,* and did not repel the presumption from lapse of time, on which the plaintiff's claim was founded.

THIS was an action on the case for a nuisance to the plaintiff's meadows, by raising and continuing a mill-dam at *Cumpo Creek,* and by filling up *New Creek,* in the town of *Fairfield.*

The cause was tried at *Fairfield, December* term 1829, before *Williams,* J.

The defendants admitted, that in 1814, they erected a mill-dam on *Cumpo Creek ;* and that, in the same year, they filled up *New-Creek ;* and the question on the trial was, whether these acts were rightfully done by them.

A stream of fresh water, running *Southerly,* enters a creek or arm of the sea a little above a place called *Bridge-Hill Bridge ;* and the creek continues in that direction, for some distance, bordered by narrow salt meadows, until it arrives at a place called *Burying-Ground Hill ;* and thence it runs *Westerly* until it comes to a strait or narrow passage, called *Gallop's Gap,* through which it runs until it enters *Cumpo Creek,* which runs *Southerly* to *Long-Island* sound. The grist-mill dam is at the entrance of *Cumpo Creek* into the sound. From *Burying-Ground Hill* to *Gallop's Gap,* the uplands lie at a distance from the creek ; and the interval consists of extensive salt meadows, called the *Farm* meadows, of which those described in the declaration are part. On the *East,* a narrow strip of land, called the *Beach,* running in a direct line from *North* to *South,* 100 rods or more, ending at *Burying-Ground Hill,* separates the meadows from *Long-Island* sound. Between *Gallop's Gap* and the mill-dam is another tract of in-

*Fairfield,*
June, 1830.

Jennings
*v*
Sherwood.

terval bordering on *Cumpo Creek*, called *Cumpo* meadows. On the *Northern* side, the defendants' dam has flood-gates, through which the rising tides flow up the whole length of all the creeks above described. These gates, at the reflux of the tide, detain the water until the tide has fallen; and then it moves the machinery of the mill. The reflux of the tide is thus prevented, on the *South*, by the dam, and on the *East*, by the beach; and both are necessary to the use of the mill.

In 1804, one *Oakley* had a grant from the town to erect a mill where the defendants' mill now is; but he was to indemnify the meadow proprietors against all injury therefrom. Through several intermediate conveyances, it came to the defendants. In the year 1783, 4 or 5, the sea made an irruption through the beach, at the *North-Eastern* extremity of *Farm* meadows, by which *New Creek* was formed. To obviate the difficulty from this occurrence, and to prevent the escape of all the water from his mill-pond, the then owner filled up the narrow strait at *Gallop's Gap*, with the consent of the owners of the *Farm* meadows, and thus separated the waters of *Crumpo* meadows from the waters of *Farm* meadows, using the former only for his mill; and the latter were flowed and drained, during this period, by means of *New Creek*, until it was filled up by the defendants. From the erection of the mill until the filling up of *Gallop's Gap*, the meadow proprietors, for their own convenience, and at their own expense, had kept up flood-gates on the *Western* side of the gap, for about six weeks in the months of *September* and *October*, to protect their meadows while getting in their hay. At all other times, the water passing in and upon the meadows, composed part of the mill-pond. After *New Creek* was formed, these flood-gates became useless.

In 1793, *Nathaniel Scribner*, being owner of the mill site, and having erected a new mill, and wishing to avail himself of the waters on the *Farm* meadows, again opened *Gallop's Gap*. As a barrier against the sound, on the *East*, and as a substitute for that part of the beach, which was broken away, he erected a dam from that point of the beach, which formed the *Southern* shore of *New Creek*, to a point at the opposite upland at the *North Eastern* extremity of the *Farm* meadows upon and across those meadows; so that *New Creek* was without the dam on one side, and the *Farm* meadows were within it on the other. To this dam he affixed flood-gates, so located as to ad-

mit the water, at rising tide, to flow in from *New Creek* on *Farm* meadows, and to close, on return of tide, so as to include the water for the use of his mill. He also made and maintained flood-gates at *Gallop's Gap*, to be used in the season of getting salt hay only. So they remained until 1802, when the gates went down, and so continued until 1814, when the defendants filled up *New Creek*.

*Fairfield,*
June, 1830.
___

Jennings
*v.*
Sherwood.

The plaintiff claimed, that the defendants' dam was higher and closer than formerly ; which the defendants denied.

The plaintiff also claimed, that as *New Creek* had been open more than fifteen years, he had, by lapse of time, acquired a right to all the benefits of it ; and that the defendants had no right to close it.

From the opening of *New Creek* to the time when *Scribner* built his dam, was but nine years ; and the defendants claimed, that no presumption of right on the part of the owners of the *Farm* meadows, or of loss of right on the part of the mill owners, could arise from the continuance of *New Creek* between that time and 1802. In support of this claim, the defendants introduced the deposition of *Samuel Morehouse,* by which they claimed to have proved, that at the time of the erection of the dam and flood-gate in 1793, a written unsealed agreement, since lost by time and accident, was made between *Scribner,* on the one part, and the owners of the *Farm* meadows, on the other, for the mutual convenience of both parties, that as a substitute for that part of the beach where a breach had been made, *Scribner* should erect a dam on *Farm* meadows, with flood-gates to it, and at *Gallop's Gap,* by which the waters should be kept from the meadows, in the season of getting hay, and be used, by *Scribner,* for his mill ; and that such dam and flood-gates, were accordingly erected, and were used until 1802, when they went down.

*Morehouse's* testimony was as follows : " In order to procure more water, *Scribner* made a proposition to the proprietors of the *Farm* meadows, that if they would permit him to erect a dam *West* of *New Creek,* he would so construct it, that flood-gates could be put upon either side, so that when the proprietors wished to get their hay, he would shift the gates and keep the water out, provided that when the season for getting hay was over, he should be permitted to put his gates on the other side, and keep the water in for the use of his mill. The time specified for getting hay was five or six weeks in

*September* and *October.* The proprietors agreed to accept the proposition so made. They were willing to gratify *Scribner*, provided their meadows were not to be injured by it; and they thought it would be a great benefit to have the water kept off from the meadows in the season of getting their hay. The privilege was to be continued to *Scribner*, so long as he continued to keep up the gates, and to cease, on his neglect. The particulars of this agreement were reduced to writing, and left with the late Dr. *Jesup.* That writing is now lost."

The defendants therefore prayed the court to instruct the jury, that during the existence of this agreement, no presumption from lapse of time would arise against the mill owners.

The court instructed the jury, that if they should find, that an agreement was made between *Scribner* and the proprietors of the *Farm* meadows, by which the right of *Scribner* to fill up *New Creek* was recognized, then the defendants were justified in filling it up.

The jury returned a verdict for the plaintiff; and the defendants moved for a new trial for a misdirection.

*Sherwood* and *Sherman*, in support of the motion, contended, That the case was improperly put to the jury, inasmuch as it was left to them to find the effect and operation of the written agreement entered into between *Scribner* and the owners of the *Farm* meadows, in 1793.

In the first place, what effect and operation a writing shall have—especially, an agreement in writing—is purely a question of law. As a general rule, it is as exclusively the province of the court to determine the construction of a written instrument, as it is that of the jury to decide upon its execution, if produced, or upon its contents, if lost.

Secondly, the presumption in question, in this case, belongs to that class of presumptions, which are the mere *artificial creatures of the law,* depending entirely on considerations of *legal policy* and *convenience,* as contradistinguished from conclusions drawn from the natural tendency and weight of evidence. 3 *Stark. Ev.* 1203. 1225. In other words, this is a presumption of *law,* in contradistinction to a presumption of *fact.* Here, the *law* makes the inference. The jury have nothing to do but to find the facts from which it results.

Thirdly, during the continuance of the agreement in ques-

tion, the law raised no presumption from lapse of time against *Fairfield*, the right of the mill-owners to fill up *New Creek;* because, during that period, no *neglect* was imputable to them. Neglect is the foundation of a presumption of this character. But while this arrangement lasted, *Scribner* not only had no occasion to fill up *New Creek,* but it would have been an act of bad faith in him to do so.

*June, 1830.*

Jennings
*v.*
Sherwood.

*N. Smith* and *Swift,* contra, contended, 1. That the judge was not bound in his charge to the jury, to give a construction to the agreement between *Scribner* and the mill-owners. [This point was not much insisted on.]

2. That there is nothing in the agreement, according to its true construction, adverse to the the claim of the plaintiff. In the first place, the agreement did not relate to, and did not affect *New Creek.* Neither the dam or the gates touched it any where. It cannot be presumed, that the rights of the mill-owners were discussed, or were in the minds of the parties, at the time of the agreement.

Secondly, by the agreement, *Scribner* admits, by fair implication, the right of the proprietors of the meadows to all the water *East* of the gap, by procuring permission from them, and obtaining it as a favour, without asserting any claim or right of his own, to open the gap. He thereby admits, that they have a right to have the waters flow out at *New Creek.*

Thirdly, every privilege that *Scribner* enjoyed, by virtue of the agreement, he enjoyed *under* the proprietors of the meadows ; and consequently, he acquired no right, by such user and enjoyment, and they were not thereby deprived of any right.

WILLIAMS, J. It is certainly true, that the construction of a written document is matter of pure law, where the meaning is to be collected from the document itself ; but where the meaning is to be judged of, by extrinsic circumstances, the construction is usually a question of fact for the jury. 1 *Stark. Ev.* 429. So where a writing is ambiguous, it has been submitted to the jury for them to infer the intent of the party. *Lloyd* v. *Maund,* 2 *Term Rep.* 760. 762. In this case, there is no direct agreement recognizing the right of filling up *New Creek ;* nor was the agreement itself before the court. The substance of a contract, made about forty years ago, was given from the

*Fairfield,*
June, 1830.

Jennings
*v.*
Sherwood.

recollection of an ancient witness. Under such circumstances, the court thought it proper to leave it to the jury to say, whether that contract, in any manner, recognized the right of the mill owners to fill up *New Creek.* And when I consider the nature of the testimony to prove this contract, and the variety of extrinsic circumstances adverted to, by the defendants, to arrive at the result they desire, I am not satisfied that this direction was wrong.

But however this may be, it is certain, that the defendants cannot complain, unless they can establish another proposition, *viz.* that the contract claimed to have been proved, did recognize the right in *Scribner* to fill up *New Creek,* or did rebut the presumption against him from lapse of time. How then is this ?

For about twenty-one years, the plaintiff, and those under whom he claims, have had the enjoyment of the waters upon their meadows, by the influx and reflux of the tides through *New Creek.* The defendants and those under whom they claim, have seen them in this enjoyment, during that time, and never claimed, that the meadow proprietors had not a perfect right to such enjoyment, and have never offered to disturb them in it. If, during all this time, they had the right to disturb them, it is fair to infer, that it was relinquished, unless they, on their part, can show a recognition of that right, or satisfactorily account for their neglect in asserting it. This the defendants attempt to do, by the contract spoken of, by the witness *Morehouse.* That contract, so far from recognizing the existence of such a right, does not allude to it. It no where appears, that *Scribner claimed* this right ; much less, that the meadow proprietors *conceded* it. So far from his agreement not to shut up *New Creek,* being the consideration of their permitting *Scribner* to put up flood-gates, they grant him this *as a privilege,* for which the only apparent consideration was his shutting out the water from their meadows, in the season of getting hay. Neither the *court,* nor the *jury,* therefore, were authorized to say, that that right was recognized, by this agreement ; and it would be too much to infer from the grant of one privilege to *Scribner,* the existence of a right in him, which might have compelled that grant, when such a right is not alluded to in the contract.

It is said, that the presumption under which the plaintiff claims, is founded upon a supposed *neglect ;* and that this con-

tract removes any presumption of such neglect. To this, it would here, perhaps, be a sufficient answer, that it does not appear, that this claim was made at the trial. But waiving that answer, it is believed, that the agreement no more proves this than the other proposition.

The defendants claim, that they have been guilty of no negligence in not exercising their rights, because, by the contract alluded to, that exercise was unnecessary to them. This is not the argument in terms; but it seems to be in effect. The fact that the defendants were poor and unable to assert their rights, or that they were rich and did not need the advantage of them, would be alike inefficacious. Such circumstances have never been admitted as a sufficient excuse for non-user, or as sufficient to rebut the presumption of law founded upon uninterrupted enjoyment.

It is said, that as the defendants were not interrupted, they could not sue. But they could have done, at an earlier period, what they have done, now: they could have filled up *New Creek*, by which they would have asserted their own right, and interrupted the enjoyment of the plaintiff.

It is not easy, therefore, to see why these defendants do not stand upon the same ground as any other persons, who have lost their right, by lapse of time. It would certainly be no excuse for one, who had suffered another to occupy the water of a river, for more than fifteen years, for the use of a mill, that he did not need the water for his own mill, but that after that time, his springs having failed, he needed all the water himself. *Ingraham* v. *Hutchinson,* 2 *Conn. Rep.* 584. 590.

It is further claimed, that the agreement alluded to, imposes an obligation on *Scribner* not to fill up *New Creek.* This is to assume a consideration for that contract, which no where appears; and unless the right to fill up the creek is recognized in this agreement, it is difficult to discover how *Scribner* is bound not to fill it up. It appears to me, that the proprietors of the meadows may as well claim, that *Scribner,* by that contract, admitted their right to the free use of *New Creek,* as they permitted him to erect gates, as he can claim that as an admission of his right to fill up *New Creek.* And nothing contained in that agreement bound *Scribner,* either in law or honour, to forbear the exercise of his rights.

I think, therefore, that there ought not to be a new trial.

*Fairfield,*
June, 1830.

Jennings
*v.*
Sherwood.

HOSMER, Ch. J. and PETERS, J. were decidedly of the same opinion.

BISSELL, J. had some doubt whether the case was properly submitted to the jury, being inclined to think, that it should have been left to them to find, whether the agreement was, or was not, a substitute for the right to fill up *New Creek*, with a direction, that if they should find that it was, it was an answer to the presumption from lapse of time ; but on further consideration, he acquiesced in the decision of the Court.

DAGGETT, J., having been of counsel in the cause, gave no opinion.

New trial not to be granted.