# O. J. Doggett et al., Appellees, v. H. N. Greene, Appellant.

# Gen. No. 15,755.

1. VERDICTS—*when not disturbed.* The Appellate Court is reluctant to set aside a verdict as against the weight of the evidence where two juries acting independently have found the same way.

2. EVIDENCE—*propriety of receiving testimony given upon former trial.* If upon a former trial a party called a witness, upon a subsequent trial such party may offer not only the direct but also the cross-examination of such witness.

3. EVIDENCE—*when secondary competent.* Proper foundation having been laid, secondary evidence of the contents of a letter containing the basis of the contract sued on is competent.

4. EVIDENCE—*when conversation with deceased witness rendered competent.* "If counsel chooses to cross-examine a witness as to facts which were not admissible in evidence, the other party has the right to examine him as to the evidence thus given."

5. CONTRACTS—*when question to be submitted to jury.* If the terms of a contract are disputed the entire question as to the contract rights and obligations of the parties must be submitted to the jury.

Appeal from the Municipal Court of Chicago; the HON. MAX EBERHARDT, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed October 5, 1911.

GEORGE A. TRUDE and M. MARSO, for appellant.

THOMAS E. D. BRADLEY, for appellees.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

This is an appeal from the Municipal Court of Chicago in a case of the first class. The judgment appealed from was for $1,125, and was in favor of a firm of real estate brokers doing business as W. D. Doggett & Bros. against one Horatio N. Greene for commissions earned, as plaintiffs claim, in selling for said

Greene certain real property on Michigan avenue in Chicago. The judgment was entered on the verdict of a jury, before whom the case was tried. A previous trial before another jury had resulted in a like verdict, and a new trial had been granted. The alleged errors assigned and argued in this court are the admission of incompetent evidence, the giving of incorrect instructions, the refusal of correct instructions, and also the refusal to take the case from the jury on the ground that there was no evidence to support a verdict for the plaintiff, or, as that was not done, to set aside the verdict when rendered as contrary to the clear weight of the evidence.

Considering the case as it was made and assuming that there was no incompetent evidence admitted nor instructions erroneously given or refused, we should in any event be reluctant on the ground of a counter preponderance of evidence, to set aside the decision reached independently by two juries on the questions of fact. Our duty, however, requires us to examine the matter first in that view. This involves also, of course, the consideration of the ultimate theory of the evidence urged by the appellant, that no part of it even tends to support the plaintiffs' case, and that therefore the jury should have been peremptorily instructed for the defendant. Before stating our conclusions in this regard we will make a summary of the facts and the evidence relating to them as that evidence stands in the record.

In 1902 and prior thereto Mrs. Julia F. Heyworth and H. N. Greene owned adjoining pieces of real estate on Michigan avenue. The property of Greene was on a corner and numbered 1261 Michigan avenue. H. N. Greene was in 1902 a retired business man seventy-two years old, whose residence was Chicago, but who travelled much for his wife's health and therefore spent much of his time away from home.

He was so much away from home during those years, principally beyond seas, that his son, Dr. Frank C. Greene of Chicago, testified (by deposition, he being then ill) that his father in 1902 and 1903 "had no settled residence, but was traveling abroad." Dr. Greene during this time had charge of the property, which was improved. He collected the rents and received and assumed to act (by peremptory refusal) on applications of purchase of the property. He was admittedly a middle man in negotiations which resulted in the conveyance by his father of the property in question to Mrs. Julia F. Heyworth by deed executed in the State of New York November 2, 1903. Whether or not he had authority to sell the property in question, using his discretion as to price and method, is one of the controverted questions of fact in the cause. The defendant, H. N. Green, testified that his son had no such authority and had nothing to do with the property beyond collecting the rents, but subsequently admitted that the Doctor "looked after the property" while he (the defendant) was away, and that he (the Doctor) claimed that he made the sale, and that he sent him the deed for execution. One of the plaintiffs, Herbert Doggett, the member of the firm of W. L. Doggett & Bros. who claims to have conducted (for the firm) the negotiations which resulted in the sale, and to have thereby earned the commissions sued for in this cause, testified, over objections to be hereafter considered, that he saw a letter from the defendant to Dr. Greene, dated November 5, 1902, in which the express authority to sell, with absolute discretion as to price, was given; and James O. Heyworth, a witness called (for the defendant) to prove that his negotiations and not the plaintiffs' resulted in the sale in question, testified that the business was all conducted with Dr. Greene; that his conversations with him about the sale began as early as 1897, and that the purchase was summarily concluded with Dr. Greene within a

week of a threat to build on the Heyworth lot.

Besides testimony of James O. Heyworth that prior to and during the years of 1902 and 1903 he talked with Dr. Greene about a purchase and sale of 1261 Michigan avenue, there is in the record testimony in the deposition of Dr. Frank C. Greene, before referred to, that before his negotiations with Herbert Doggett, hereafter detailed, he had a conversation with Lawrence Heyworth, another son of Mrs. Julia Heyworth, in relation to the purchase of the property in question by his mother. He says, however: "It was not in a serious way. We talked over the sale of the property, but no specific offer was arrived at. Mr. Lawrence Heyworth advised me to sell, as the building was falling down and the property was no good any way, and any terms of sale would be better than keeping the old building in repair. As I remember, I was not serious in my conversation with him, as I fully realized the value of the property and felt also that he did. These conversations took place at the Chicago Athletic Club when we happened to get together for a game of pool or amusement." The only other allusion Dr. Greene made to any direct communication with the Heyworths in that part of his deposition read in evidence was the statement in answer to the question whether after conversing with the plaintiffs he talked with the Heyworths about the property, that six months after he happened to meet James Heyworth on the street. He does not say what passed between them.

Doctor Greene died before the first trial of the case, after his deposition had been taken in behalf of the defendant. Such portions as were offered and read in evidence were so offered and read by the plaintiffs' counsel.

Except so far as hereinafter stated Dr. Greene's statements in his deposition tend to support the plaintiffs' case, it depends entirely on the testimony of Herbert Doggett, and certain correspondence pro-

duced by him and read into the record. His story in substance is this: He is a member of the plaintiff firm, who are licensed real estate brokers, making a specialty of the sale of down town property and of negotiating long leases. Prior to October, 1902, he had been acquainted with Doctor Greene (but not recently at least with his father) and with the Heyworths, mother and sons, for a long time. He knew the ownership of the property at 1261 Michigan avenue. Dr. Greene had told him of it. He ascertained that the Heyworths were the owners of the property adjoining it.

Having talked with Dr. Greene prior to October 30, 1902, Doggett went to Lawrence Heyworth and to Mrs. Julia Heyworth and had conversations with them about the purchase by Mrs. Heyworth of 1261 Michigan avenue, telling her that Dr. Greene had said that his father wished to sell it and had asked him (Doggett) to get a purchaser for it. Doggett urged the purchase on her, reminding her that it would make her entire property a corner. Mrs. Heyworth, after expressing some reluctance to increase her real estate holdings, referred him to Lawrence Heyworth, telling him that whatever Lawrence did would meet her approval. Thereupon Doggett took up negotiations with Lawrence and received authority to make an offer. October 30, 1902, pursuant thereto, he wrote a letter to Dr. Greene telling him that he was authorized by Lawrence Heyworth to offer $39852.51 cash for the property and urging the submission of the offer to Dr. Greene's father—the defendant—and its acceptance. He received a reply under date of November 4th from Dr. Greene, declining to consider the offer or submit it to his father. November 5th, having previously telephoned Dr. Greene and seen Lawrence Heyworth, Doggett wrote again to Dr. Greene, transmitting a new offer from Mr. Heyworth to take a ninety-nine year lease of the property on a rental of

four per cent on $53,000, with the privilege of pur-
chase at $55,000 within twenty years. To this Dr.
Greene by letter replied that he had telegraphed to his
father, H. N. Greene, at New Bedford, Mass.: ''Have
offer four per cent on $53,000, ninety-nine year lease
with the privilege of purchase on or before twenty
years for $55,000. Reply at once. F. C. Greene,'' and
had received this reply: ''Offer refused. Will not
lease. Letter coming. H. N. Greene.'' Dr. Greene
added in his letter: ''His'' (the defendant's) ''letter
may contain a proposition.'' Doggett called on Dr.
Greene shortly afterward and was shown a part of a
letter from H. N. Greene dated New Bedford, Novem-
ber 5, 1902, addressed to his son, Dr. Greene, saying,
in substance: ''Your telegram received. I have wired
you. * * * We do not want to lease the property,
but want to sell and use your own discretion as to
price.''

Within a few days thereafter Doggett again saw
Lawrence Heyworth and told him his offer had been
declined, and that the Greenes would not lease. Hey-
worth said they would wait awhile. Doggett urged
Heyworth to buy lest he should lose the opportunity,
and Heyworth replied that there was no hurry—the
Greenes could sell to no one else.

In the early part of 1903 Doggett while acting in
another negotiation met Mrs. Heyworth and both her
sons in James Heyworth's office, and urged on her to
attempt the purchase for cash, and was again referred
by her to Lawrence. She said that she was going to
Europe and would leave the matter in the hands of
Lawrence. From that time on during the remainder
of the Spring, Summer and Fall of 1903, Doggett
swears he very frequently saw Dr. Greene on the one
hand and Lawrence Heyworth on the other, and
urged each to meet the other's views. Heyworth
authorized an offer of $44,000. Dr. Greene refused it.
But, so Doggett testifies, Dr. Greene finally said to

him, "I won't give Heyworth an offer in writing, but if you can get an offer from him of $45,000 I will accept it and pay your commission." On the other hand Heyworth refused to make an offer in writing, but told Doggett that he would accept such an offer if made by Greene in writing. It being finally reported to Heyworth by Doggett that an offer in writing could not be obtained, Heyworth said, "Then we will wait until my mother returns." At some time in November, 1903, after Mrs. Heyworth had returned, Doggett went up to her house to see her and renew his efforts to induce the purchase. He was then informed by her that a few days before it had been consummated at $45,000. The defendant having refused to pay Doggett any commission, this suit was brought.

The evidence above detailed is that on which the plaintiffs predicate their right of recovery. We cannot say that, taken as true, it fails to furnish support for a verdict for them.

The amount given was sworn to be the customary and usual charge made by brokers for selling property in that vicinity and the evidence tends to show that Doggett was the efficient cause of the final result. The question of its showing any justification for the employment of a broker by Dr. Greene will be considered in connection with the instructions.

It is, however, urgently insisted by the defendant that even if the evidence for the plaintiffs as it stands is sufficient to have properly prevented a peremptory instruction for the defendant, the verdict rendered is manifestly against the weight of all the evidence in the cause and should have been set aside on the motion for a new trial.

The testimony of Mr. Doggett was certainly contradicted in some particulars,—different parts that is, by different people. The defendant, Greene, swore that in the letter to his son on November 5, 1902, he did not use the words of direction and authority about

selling which Doggett said he read in it. James Hey-
worth's testimony is to the effect that his efforts
brought about the sale and seems inconsistent with,
although not in material respects directly contradic-
tory to, Doggett's. Mrs. Heyworth does not remem-
ber any statement to Doggett referring him to Law-
rence and expressing willingness to abide by what
Lawrence might do in the matter. On the other hand
a portion of Doggett's testimony was confirmed by
the deposition of Dr. F. C. Greene, whose death after
it was taken introduced an element of difficulty into
the case and probably led in some degree to the rather
confused and indefinite character of the evidence ad-
duced on each side, especially as to the dates and
particular circumstances of the transactions and con-
versations involved. Dr. Greene testified that he had
many conversations with Doggett about the property,
and that if they arrived at an agreement he had power
to close the deal; and it certainly is not without sig-
nificance that Lawrence Heyworth, although called to
the stand for the defendant, was not interrogated con-
cerning and gave no testimony contradicting the ma-
terial portions of Doggett's story.

We cannot say that we are satisfied that the ver-
dict was against the clear weight of the evidence in
the cause. Therefore we shall not interfere with it on
that ground.

The appellant, however, contends that the evidence
as it stands was in material points incompetent. It
was objected to and should have been excluded, and
its admission vitiated the verdict and judgment, as
he claims.

The first of the objections noted is that by offering
in evidence the answers of Dr. F. C. Greene to the
direct interrogatories propounded to him by the de-
fendant, the plaintiffs made him their own witness
and were precluded from offering his testimony on
the cross-examination. We do not so understand the

rule.  Adams vs. Russell, 85 Ill. 286, is authority against the proposition.  We think the court ruled correctly on the introduction of the cross-examination.

The second objection to the rulings of the trial court on evidence is that Doggett was allowed to testify as to the contents of the letter of November 5, 1903, alleged to have been written by H. N. Greene to his son, there being no evidence that H. N. Greene wrote the letter.  We do not think this objection is better taken than the first.  H. N. Greene testified that he wrote a letter to his son in answer to the communications to which the letter that Doggett saw was an answer.  Dr. F. C. Greene produced the letter but did not attach it to his deposition.  We think there was evidence sufficiently tending to show the genuineness of the letter which Doggett swore that he saw, to allow the testimony concerning its contents when the foundation for secondary evidence had been laid.

A graver question is presented by the testimony which was admitted, in which Doggett related his conversation with Dr. Greene containing the promise to accept $45,000 and pay a commission if an offer in writing could be obtained by Doggett from Heyworth. Dr. Greene was the agent of the defendant in the transactions involved.  He died before the trial and the defendant insists that the Illinois Statute on Evidence forbade the plaintiffs to testify to any conversation with the said agent.

It is undoubtedly true that such testimony is prohibited by the statute in the absence of countervailing and controlling circumstances.  It was not enough that the defendant had it in his power to read a deposition of the agent which he had taken.  The court ruled out all testimony of Doggett as to anything said to him by Dr. Greene during his direct examination.  But in cross-examination in connection with his statement that Lawrence Heyworth had told him that if he would bring an offer from Dr. Greene of $45,000, that

it would be accepted, he was asked: "Did you ever get an offer from Dr. Greene to that effect?"

On redirect examination this question was put to him by the counsel for plaintiffs: "On your cross-examination you were asked the question, 'Did you ever get an offer from Dr. Greene to that effect?' If you ever had a conversation with Dr. Greene in which he talked about submitting an offer of $45,000 to Mr. Heyworth or any other person, please state what Dr. Greene said about that subject?" To which question the witness was permitted, over objection, to answer: "Dr. Greene told me to bring him the offer from Mr. Heyworth of $45,000 for the property and he would accept it. He said, 'I know Heyworth and I won't give him a proposition in writing he can make use of adversely to the property, but I will accept $45,000 if you can get it from Heyworth tangibly and pay your commission.'"

We are not convinced that the admission of this testimony was reversible error, nor that it did not fall within the principle stated by Greenleaf (vol. 1, sec. 468) and quoted by counsel, that "If counsel chooses to cross examine a witness as to facts which were not admissible in evidence, the other party has a right to examine him as to the evidence thus given." That principle was adopted in Morton v. Zwierzykowski, 192 Ill. 328. That case did not involve a statutory prohibition, nor does the utterance of Greenleaf seem to be made with reference to one, but the reason seems as strong in a case where the incompetency is the result of such a statute as in any other.

The instructions given and the ruling of the court in refusing to instruct as requested by the defendant raise one more serious question, which may be thus stated. The defendant claims that even were all the evidence competent and properly admitted, it would still be true that there was none tending to prove that Dr. F. C. Greene had authority in making a sale to

employ a broker; that whether he had such authority was not under the evidence a question of fact for the jury, but one of law for the court, which should have given to the jury the construction and legal effect of the clause in the defendant's letter to Dr. Greene, sworn to and relied on by Mr. Doggett. The court in refusing to accept this view in its instructions and refusing to instruct the jury that the letter in question gave Dr. Greene no right to employ the plaintiffs, it is claimed fatally and fundamentally erred in its application of the law to the facts of this cause.

The question thus stated is one of some difficulty, on which none of the authorities cited seem to us exactly in point. Under ordinary circumstances it is true that the construction of a written document constituting an agent is one of law for the court. It is equally well settled, to quote the language of Judge Cooley in McKenzie vs. Sykes, 47 Mich. 294, that "Where the terms of a negotiation are left to oral proofs, the question what the parties said and did and what they intended should be understood thereby, is single and can not be separated so as to refer one part to the jury and another part to the judge, but in its entirety the question is one of fact." But the application of these principles is difficult when the language, although orally proved, is the language of a lost letter not before the court, and the use of certain words is alleged by one side and denied by the other.

The language of the court in Jennings vs. Sherwood, 8 Conn. 122, seems to bear out the court below in leaving the question of the authority conferred as one of fact to the jury.

But we are also of the opinion that while the existence of authority from the defendant to F. C. Greene was denied and was in issue, the proper construction of the words if proved would in any event, in the light of the extrinsic circumstances to which they must have been applied, be the one which inhered in the verdict

of the jury.    The cases in which an employe or paid agent has been held not to have authority to employ brokers or subagents do not seem to us of authority here.    Those most nearly in point are merely reversals of the City Court by the Common Pleas of New York City, and the decision of the one court is as persuasive to us as that of the other.    In the case at bar, if it be granted that Dr. Greene was given authority to sell, and to use his judgment as to price and terms, we think a jury would have been wrong in holding that such authority did not include the right to bind the defendant to pay for the services of a real estate broker in finding a purchaser.

For the reasons given we affirm the judgment of the Municipal Court.

*Affirmed.*